**Fred E. PATTERSON,
Plaintiff-Appellant,**

v.

**GENERAL MOTORS CORPORATION, United Auto, Aerospace and Agricultural Implement Workers of America, formerly U. A. W. and Local 719 of United Auto Workers of America, Defendants-Appellees.**

**No. 79–1139.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 7, 1980.

Decided July 29, 1980.

Rehearing and Rehearing In Banc Denied Dec. 23, 1980.

---

Peter J. Schmiedel, Chicago, Ill., for plaintiff-appellant.

Robert A. Egan, Patricia A. Brandin, Chicago, Ill., for defendants-appellees.

Before SWYGERT, SPRECHER and BAUER, Circuit Judges.

SPRECHER, Circuit Judge. .

The following issues are raised in this appeal: (1) whether the district court erred in holding that plaintiff's suit was not properly maintainable as a class action; (2) whether the district court erred in granting summary judgment against plaintiff on several claims of discrimination by his employer and on his claim of inadequate representation by his union;[1] and (3) whether the district court erred in dismissing under Federal Rule of Civil Procedure 41(b) plaintiff's claim of discrimination which did go to trial. We answer all of these questions in the negative and affirm the judgments below.

## I

Plaintiff, Fred E. Patterson, sued his employer, General Motors Corporation (GM), his union, the United Auto, Aerospace and Agricultural Implement Workers of America (the Union) and his local, Local 719 (the Local), for discriminating against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. Plaintiff is a black citizen of the United States and has been a welder for more than thirty years at GM's Electro-Motive facilities in Chicago, Illinois.

Patterson first filed a pro se suit in this case on July 6, 1973. Since that time, however, counsel has been appointed for him and two subsequent amended complaints have been filed. In his second amended complaint, filed March 5, 1974, plaintiff purported to represent a class

composed of Negro persons and other minority workers who are employed, or might be employed, by GENERAL MOTORS at its Electro-Motive facilities at

---

1. In his brief on appeal, plaintiff lists inadequate union representation as an issue presented for review, Brief of Plaintiff at v, but he does not address it as a separate issue in his argument. Instead, he consolidates his complaint against the union with his claims of discrimination by his employer. We will do the same in our analysis.

La Grange, Illinois; at 900 East 103rd Street, Chicago; at Willow Springs, Illinois; and at its Parts Plant in Chicago, Illinois. The class comprises the foregoing persons, present or future members of the LOCAL, who have been and continue to be or might be affected by the practices complained of herein.

Second Amended Complaint at 2–3, in Appendix at 72–73.

In Count I of the complaint, plaintiff prayed for a declaratory judgment with respect to his civil rights and for a preliminary injunction to restrain defendants (1) from racially discriminating against him and members of the class with respect to compensation, terms, conditions and privileges of employment and (2) from limiting, segregating and classifying GM employees in ways which deprive the class of equal employment opportunities. Second Amended Complaint at 3, in Appendix at 73. In particular, plaintiff alleged that GM acted in concert with the Union and the Local to institute and maintain the following unlawful practices:

A. Replacing the plaintiff on his job with a White worker of lesser seniority and experience.

B. Failing to promote the plaintiff.

C. Maintaining an essentially all-White department.

D. Harassing the plaintiff, both directly and in collusion with the defendant Union and Local, in retaliation for seeking the redress of various grievances through State and Federal agencies, including the following specific acts:

(i) Terminating the plaintiff's employment on various occasions.

(ii) Forcing him to return prematurely from medical leave.

(iii) Improperly making available to rival Union members company records.

(iv) Erroneously charging plaintiff with violation of various shop rules.

(v) Wrongfully penalizing plaintiff for violation of these erroneous charges.

(vi) Conspiring with The Union in removing the plaintiff from The Union's "Fair Employment Practices Committee".

(vii) Conspiring with The Union in preventing plaintiff from being elected to Committeeman.

Second Amended Complaint at 4–5, in Appendix at 74–75.[2]

In Count II of the complaint, plaintiff alleged that the Union and the Local had breached the duty of fair representation imposed on them by the National Labor Relations Act and that GM had knowingly participated in or acquiesced in that breach. According to plaintiff, the duty of fair representation was breached when the Union and the Local acquiesced and joined in the discriminatory policies enumerated in Count I and failed to protect him and members of the class from those discriminatory policies. Second Amended Complaint at 6, in Appendix at 76.

On May 16, 1974, by agreement of the parties, the defendant Union was dismissed with prejudice, so that only GM and the Local remained as defendants. See Record on Appeal, Volume I, Document No. 23. On September 26, 1974, the lower court refused to certify plaintiff's suit as a class action. *Patterson v. General Motors*, No. 73 C 1751 (N.D.Ill. Sept. 26, 1974). Plaintiff appeals from that determination.

On June 14, 1976, the lower court granted summary judgment against plaintiff on all except one of his claims of discrimination. *Patterson v. General Motors*, No. 73 C 1751 (N.D.Ill. June 14, 1976). In the one claim that did go to trial, the court granted de-

---

**2.** After discovery and issuance of a pre-trial order, plaintiff withdrew his requests for relief from GM for the following practices: maintaining an essentially all-white department; improperly making available to rival Union members company records; erroneously charging plaintiff with violating various shop rules; wrongfully penalizing plaintiff for violation of these erroneous charges; conspiring with the Union in removing plaintiff from the Union's "Fair Employment Practices Committee"; and conspiring with the Union in preventing plaintiff from being elected committeeman. Plaintiff's Submission For Pre-Trial Order at 15–16, in Appendix at 177–78.

fendant's motion under Rule 41(b) to dismiss the suit at the close of plaintiff's evidence because he had failed to show a right to relief under the facts and the law. *Patterson v. General Motors*, No. 73 C 1751 (N.D.Ill. July 26, 1976); Appendix at 27–28. Plaintiff also appeals from both of those determinations.

## II

We will first address plaintiff's argument that the lower court erred in refusing to certify his suit as a class action. Recognizing that a trial court's determination of whether a suit is properly maintainable as a class action may be set aside only if the court has abused its discretion, *Susman v. Lincoln American Corp.*, 561 F.2d 86, 90 (7th Cir. 1977), plaintiff argues that the lower court did abuse its discretion by erroneously applying to his case the requirements for class action certification.

Federal Rule of Civil Procedure 23 clearly outlines the prerequisites to a class action:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Contrary to plaintiff's assertion that a class action is appropriate "in all instances [in which] the discrimination in employment was racial, even though the discrimination may have been manifested in a variety of practices affecting different class members in different ways and at different times," Brief of Plaintiff at 40, it is clear that such a blanket rule is not a proper statement of the law. Rather, the proper analysis is precisely the one employed by the lower court: whether the action meets *all* of the requirements of Rule 23(a). See *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 405–06, 97 S.Ct. 1891, 1897–98,

52 L.Ed.2d 453 (1977). As the following discussion will show, plaintiff's action meets *none* of the requirements of Rule 23(a).

### A

We will first consider whether the class which plaintiff purports to represent is so numerous that joinder of all members would be impracticable. See Fed.R.Civ.P. 23(a)(1).

As stated by the district court, "[u]nlike the typical Title VII class action case, this is not a case challenging a general employment policy such as testing, seniority rules, weight lifting restrictions, pregnancy policies or other policies of general application which clearly relate to a class of numerous similarly situated employees." *Patterson v. General Motors*, No. 73 C 1751 (N.D.Ill. Sept. 26, 1974) at 3. Indeed, except for his assertion that he was filing suit on behalf of all minority workers at GM, plaintiff's complaint was not framed in class action terms at all. Although he did state that the defendants' discriminatory policies adversely affected the purported class, he nowhere substantiated that claim with any factual allegations of classwide discrimination. The facts alleged in plaintiff's complaint relate solely to plaintiff's personal grievances. See Part I, *supra*. As the court said in *Gresham v. Ford Motor Co.*, 53 F.R.D. 105 (N.D.Ga.1970):

[T]his appears to be a case of particular action taken against an individual, resolution of the dispute involving which will require only examination of the particular facts involved in each [allegation].

*Id.* at 106–07. Plaintiff has not indicated that any other employee has ever been discriminated against in the same way or that there is the likelihood of such a future class ever existing. We hold that the class is purely speculative and that plaintiff has failed adequately to meet the numerosity requirement of Rule 23(a)(1) of the Federal Rules of Civil Procedure. See *O'Brien v. Shimp*, 356 F.Supp. 1259, 1266 (N.D.Ill. 1973).

## B

By the same token, we hold that plaintiff has failed adequately to demonstrate that there are questions of law or fact common to the class. See Fed.R.Civ.P. 23(a)(2). Although a class action will not be defeated solely because of some factual variations among class members' grievances, see *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 831 (8th Cir.), *cert. denied*, 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977), plaintiff in this case has simply asserted *no* facts relating to other members of the purported class. Moreover, "even if the plaintiff were to specify grievances of other members of the purported class, the acts for which plaintiff complains are not susceptible to class treatment." *Patterson v. General Motors*, No. 73 C 1751 (N.D.Ill. Sept. 26, 1974) at 6. A certifiable class claim must arise out of the same legal or remedial theory, see *Donaldson, supra*, 554 F.2d at 831, and grievances of other employees similar to those asserted by plaintiff would not meet that requirement. The issue of whether a particular job assignment or promotion denial was discriminatory would depend upon any number of factors peculiar to the individuals competing for the vacancy, including relative seniority, qualifications, availability for work and desire to perform the job. Each disciplinary action would present a different set of facts for each employee. "In other words, the plaintiff's claims do not relate to general policies or practices which are allegedly discriminatory, but rather to individualized claims of discrimination which could not possibly present common questions of law or fact sufficient to justify class action treatment." *Patterson v. General Motors*, No. 73 C 1751 (N.D. Ill. Sept. 26, 1974) at 7.

## C

In addition, plaintiff's claim does not meet the requirement that the claims or defenses of the representative party be typical of the claims or defenses of the class. See Fed.R.Civ.P. 23(a)(3). As one court stated:

Any inquiry into typicality under Rule 23(a)(3) requires a comparison of the claims or defenses of the representative with the claims or defenses of the class . . . . Since the burden is on the plaintiff to establish the prerequisites of Rule 23, . . . it is not unreasonable to require the plaintiff to establish the existence of a class as preliminary to the court's comparison of claims and defenses.

*Taylor v. Safeway Stores, Inc.*, 524 F.2d 263, 270 (10th Cir. 1975). In this case, plaintiff's complaint makes no mention of specific factual allegations with respect to the claims of the class as as whole; consequently, our "inquiry into typicality" is severely limited.

But even if plaintiff were to specify grievances for other members of the purported class, the acts about which he complains are not susceptible of class treatment. Because plaintiff's claims are so personal—*he* was replaced by a less senior white worker; *he* was harassed in retaliation for seeking redress of *his* various grievances—"it is predictable that a major focus of the litigation . . . [would have been] on an arguable defense unique to the named plaintiff . . . [so that] the named plaintiff is not a proper class representative." *Koos v. First National Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir. 1974).

## D

This leads us directly into plaintiff's failure to meet the fourth requirement. We hold that he cannot fairly and adequately represent the interests of the purported class. See Fed.R.Civ.P. 23(a)(4).

A district's court's determination of the adequacy of representation will not be disturbed on appeal unless there has been a clear abuse of discretion. *Morris v. McCaddin*, 553 F.2d 866, 870 (4th Cir. 1977). We agree with the finding by the lower court that because the plaintiff's grievances are so personalized, there is a serious question as to whether he could fairly and adequately protect the interests of the class. This case is not the typical Title VII class action

involving a challenge to employment policies of general application. Even if other employees are identified who claim, as does plaintiff, that they were denied promotion, unjustifiably disciplined or denied a union office, we do not believe that plaintiff can adequately represent their claims. Each such claim would present substantially different facts. There could even be a conflict between plaintiff and others in the alleged class. For example, other members of the purported class may have been in competition with plaintiff for the promotion or union office he was allegedly denied. *Patterson v. General Motors*, No. 73 C 1751 (N.D.Ill. Sept. 26, 1974) at 8.

The Supreme Court has stated that a plaintiff "must possess the same interest and suffer the same injury shared by all members of the class he represents." *Schlesinger v. Reservists Committee To Stop The War*, 418 U.S. 208, 216, 94 S.Ct. 2925, 2930, 41 L.Ed.2d 706 (1974). As our examination of the Rule 23(a) requirements makes clear, plaintiff's claims and interests are simply too personal for class action certification.

### III

Plaintiff also argues that the district court erred in granting summary judgment against him on some of his claims of discrimination. An examination of the record in this case does not support that argument.

Rule 56(c) states:

[Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The burden of proving that there is no genuine issue of material fact is on the moving party, *Rose v. Bridgeport Brass Co.*, 487 F.2d 804, 808 (7th Cir. 1973), and defendants have met that burden. Their motions to dismiss were made only after discovery had been completed and a final pre-trial order had been entered.

While defendants supported their motions with several affidavits, plaintiff's counter-affidavit contained no more than his pre-trial compliance document. Mere conclusory assertions of discrimination are not sufficient to withstand a motion for summary judgment, *Richardson v. Rivers*, 335 F.2d 996, 999 (D.C.Cir.1964), and as the district court stated, "plaintiff's affidavit and pre-trial compliance are notably lacking in specifics regarding most of his allegations." *Patterson v. General Motors*, No. 73 C 1751 (N.D.Ill. June 14, 1976) at 2.

### A

■ We will first consider plaintiff's charge that defendants violated his seniority rights by replacing him on September 13, 1971 with a less senior white employee. This claim is based on a charge filed with the E.E.O.C. on September 17, 1971 for which the Commission ultimately issued to plaintiff a right to sue letter. In plaintiff's pre-trial submission, he recited the following facts with respect to his claim:

That the Plaintiff was replaced by a less senior caucasian in Department 7031; that this was never the custom and represented a violation of the seniority rights of the Plaintiff; that several of the fellow workers in Department 7031, with comparable seniority to the Plaintiff, had never been reassigned and replaced with a fellow employee of lesser seniority.

Plaintiff's Submission For Pre-Trial Order at 5, in Appendix at 167.

In support of its motion for summary judgment, defendant GM filed the affidavit of Roger Kaspar, the Human Resources Management Representative for GM's Electro-Motive Division. According to the affidavit, under the collective bargaining agreement in effect at the time of the alleged transfer, Management had the sole responsibility for transferring employees within a particular job classification. Intra-classification transfers were not governed by seniority rights. Moreover, Kaspar stated that Management was unable to discover anything on the date alleged which affected plaintiff's seniority rights. In his

counter-affidavit, plaintiff merely referred to the statement in his pre-trial submission quoted above. Nothing in plaintiff's pre-trial submission even attempts to controvert defendant's statement that seniority rights did not govern transfers within a particular job classification or that the operative collective bargaining agreement gave to Management the responsibility of making those transfers.

When the moving party has clearly established certain facts which defeat the opposing party's claim, the circumstances of the case may cast upon the opposing party a duty to go forward with controverting facts. Otherwise, the movant will have sustained its burden of proof and will be entitled to summary judgment. See *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 359–62 & n.16, 93 S.Ct. 1652, 1655–57 & n.16, 36 L.Ed.2d 318 (1973). In this case, we believe that the facts alleged in Kaspar's affidavit cast upon plaintiff the duty to go forward with controverting facts. But rather than attempting to controvert the statements in the affidavit, plaintiff merely relied on his same general factual allegations concerning the incident. Accordingly, we find that the lower court properly found that defendants had sustained their burden of proving the absence of any material factual dispute.

### B

Plaintiff also alleges that his seniority rights were impaired on February 1, 1974, when he was again replaced on the job by a less senior white employee. However, unlike his September 13, 1971 claim, this incident was never the basis for a charge filed with the E.E.O.C., and filing a timely charge with the E.E.O.C. is a jurisdictional prerequisite to maintaining an action in the district court. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974); *Terry v. Bridgeport Brass Co.*, 519 F.2d 806, 807 (7th Cir. 1975); *Choate v. Caterpillar Tractor Co.*, 402 F.2d 357, 359 (7th Cir. 1968).

In his brief on appeal, plaintiff states that the jurisdictional requirements *have*

been met because the February 1, 1974 incident was part of a continuing Title VII violation by defendants. According to plaintiff, since the 1974 transfer was "identical to the one which caused the EEOC to issue the right to sue letter which initiated this action," then "this most recent claim of racially motivated harassment was well within the scope of the EEOC's investigation and should have been considered by the Court." Brief of Plaintiff at 25. We disagree.

Although plaintiff purports to rely on this court's decision in *Jenkins v. Blue Cross Mutual Hospital Insurance, Inc.*, 538 F.2d 164 (7th Cir.) (*en banc*), *cert. denied*, 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976), that reliance is misplaced. In *Jenkins*, we concluded that, despite plaintiff's checking on a complaint form only race and color discrimination, her charge filed with the E.E.O.C. encompassed sex discrimination as well. We held that the facts recited in the charge fairly raised her sex discrimination claim and that a mechanical reliance on which boxes had been checked defeated the policy underlying Title VII. *Jenkins, supra*, 538 F.2d at 168–69. Clearly, the considerations present in *Jenkins* are not present here.

*Jenkins* considered whether a claim of discrimination occurring *before* the filing of the charge with the E.E.O.C. was fairly encompassed within that charge. Here, plaintiff argues that a claim of discrimination occurring almost two and one half years *after* the filing of a charge with the E.E.O.C. was fairly encompassed within that charge. We cannot accept that argument.

In *Moore v. Sunbeam Corp.*, 459 F.2d 811 (7th Cir. 1972), this court held that since plaintiff's E.E.O.C. charge did not suggest continuing discrimination, then his charges of discrimination occurring after the time covered in his E.E.O.C. charge could not form the basis for a complaint in federal court. *Id.* at 826 n.38, 827–28. Nevertheless, plaintiff maintains that his complaint alleges a continuing violation, so that the alleged seniority violation of February 1,

1974 was indeed within the scope of the 1971 charge filed with the E.E.O.C. We again disagree.

■ In his September 17, 1971 charge of discrimination, plaintiff stated that his employer and union had discriminated against him because of race by denying him his seniority rights and attendant benefits. Appendix at 63. Nowhere in that charge nor in his affidavit opposing defendants' motions for summary judgment did plaintiff recite facts sufficient to suggest a continuing violation. In any event, the mere conclusory allegation of a continuing violation would not be sufficient to overcome the time and filing requirements of Title VII. Cf. *Moore, supra,* 459 F.2d at 828. Moreover, as the Supreme Court stated in *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977):

> [T]he critical question is whether any present *violation* exists.

*Id.* at 588, 97 S.Ct. at 1889 [emphasis in original]. As stated in our discussion of the September 13, 1971 incident, plaintiff has not overcome defendants' showing that seniority rights played no role in intra-classification transfers. Defendants have sustained their burden of proof, and the district court properly granted summary judgment on that claim.

By the same token, the district court properly granted summary judgment against plaintiff on his section 1981 claim arising from the February 1, 1974 incident. Plaintiff has met all the procedural requirements for maintaining a section 1981 action, but he has not controverted the statements in Kaspar's affidavit. As with the 1971 charge of a seniority violation, defendants have sustained their burden of proving the absence of any genuine issue of material fact.

C

■ Plaintiff also objects to the summary judgment against him on his claims of discriminatory denial of promotion in 1961

and 1962. Since these allegedly discriminatory acts occurred *before* the effective date of Title VII, plaintiff has no cause of action under Title VII. Even if plaintiff were to prove, which we hold he does not, that the promotion denial was a violation continuing through the effective period of Title VII, the district court did not have subject matter jurisdiction to entertain plaintiff's complaint because of his failure first to file a charge with the E.E.O.C.

■ Of course, the law is quite clear that the failure to meet Title VII's jurisdictional prerequisites does not bar a suit under 42 U.S.C. § 1981 if the procedural requirements for that statute are met. See *Waters v. Wisconsin Steel Works,* 502 F.2d 1309, 1315 (7th Cir. 1974), *cert. denied,* 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976); *Alpha Portland Cement Co. v. Reese,* 507 F.2d 607, 610 (5th Cir. 1975). However, plaintiff has not met the timeliness requirements for section 1981.

The applicable Illinois limitations period for bringing a section 1981 action is five years, *Waters v. Wisconsin Steel Works,* 427 F.2d 476, 488 (7th Cir.), *cert. denied,* 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970), and plaintiff did not file suit in this case until July 6, 1973, more than ten years after the alleged promotion denials in 1961 and 1962. Plaintiff attempts to overcome this defect by suggesting that the denial was a continuing violation and that, in any event, the limitations period was tolled by the numerous grievances he allegedly filed, but upon which the Union never acted.

■ We will first consider whether the alleged violation was a continuing one. Although plaintiff does make the general assertion in his Second Amended Complaint that all of the discriminatory acts about which he complains "are continuing to the present time," Second Amended Complaint at 5, in Appendix at 75, such a conclusory statement is not sufficient to show a continuing violation.[3]

---

3. Indeed, Rule 56 quite clearly states that an adverse party may not rest upon the mere allegations or denials of his pleadings, but his

response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for

In *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), the Supreme Court considered the allegation of a continuing violation in the context of a Title VII action. We believe its analysis to be equally applicable to a section 1981 action. The plaintiff in *United Air Lines* sued her employer for a continuing sex discrimination violation. Plaintiff had been forced to resign as a flight attendant under the air line's admittedly unlawful "no marriage" policy; however, since she was not a party to the case finding the policy unlawful and since she did not initiate timely proceedings on her own, plaintiff was time barred from complaining of that discriminatory act. Four years after her resignation she was rehired, but she was treated as a new employee for seniority purposes. According to the *United Air Lines* plaintiff, the seniority system gave present effect to the past illegal act and therefore impermissibly perpetuated the violation. The Court disagreed.

Writing for the majority, Justice Stevens stated that United was entitled to treat the past act as lawful because it was not made the subject of a timely challenge by plaintiff at the time it occurred:

A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence . . ., but separately considered, it is merely an unfortunate event in history which has no present legal consequences.

*Id.* at 558, 97 S.Ct. at 1889. By the same token, since plaintiff in this case did not bring a timely section 1981 action after his 1962 promotion denial, he cannot now be heard to object to the continuing effect of that denial.

We are not persuaded that the nature of plaintiff's 1962 application for promotion was such that it was a continuing request which did not have to be renewed. To accept such a statement would be to emasculate completely the concept of a statute of limitations. The application nowhere states that the request is a continuing one, see Appendix at 111, and we decline to read in such a provision.

■■ We also hold that the statute of limitations was not tolled by plaintiff's filing grievances with the Union. The law is clear that resort to a grievance process under a collective bargaining agreement does not toll the limitations period. *International Union of Electrical, Radio & Machine Workers, Local 790 v. Robbins & Myers, Inc.*, 429 U.S. 229, 238–40, 97 S.Ct. 441, 448–49, 50 L.Ed.2d 427 (1976). The district court therefore properly granted summary judgment in favor of defendants.

D

The district court also properly granted summary judgment against plaintiff on his claim that he had been discriminatorily terminated by GM on August 9, 1968. In his brief, plaintiff states that the district court incorrectly held that his Title VII claim was barred because of his failure to file a timely charge with the E.E.O.C. Brief of Plaintiff at 37. According to plaintiff, the district court ignored his deposition in which he testified that he *had* filed a charge with the E.E.O.C. regarding his 1968 discharge; therefore, defendants did not sustain their burden of proving the absence of a genuine issue of material fact. We disagree.

Despite the assertions of both defendants in their summary judgment memoranda that the 1968 discharge was outside the scope of the charge which formed the basis for this suit, plaintiff did not attempt to present controverting facts in either his opposing memorandum or supporting affidavit. Moreover, a copy of a timely charge filed with the E.E.O.C. was not made part of the record. The only reference to such a charge was in plaintiff's deposition, and plaintiff's opposing materials did not even direct the court to that deposition. But

---

trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Fed.R.Civ.P. 56(e); see *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159 n.20, 90 S.Ct. 1598, 1609 n.20, 26 L.Ed.2d 142 (1970).

even if the court were required to consider and credit the unsupported claim in plaintiff's deposition, the jurisdictional prerequisites to maintaining a Title VII action still have not been satisfied.

■ A right to sue letter from the E.E.O.C. is a jurisdictional prerequisite to bringing a Title VII suit, *Gibson v. Kroger Co.*, 506 F.2d 647, 650–51 (7th Cir. 1974), *cert. denied*, 421 U.S. 914, 95 S.Ct. 1571, 43 L.Ed.2d 779 (1975), and the right to sue letter which forms the basis for plaintiff's complaint in this case does not relate to the 1968 discharge. See Appendix at 62–64. Therefore, the existence *vel non* of a timely charge filed with the E.E.O.C. is not a material fact.

■ The district court was also correct in granting defendants' summary judgment motions on plaintiff's section 1981 claim. The allegedly discriminatory termination occurred on August 9, 1968, more than five years before plaintiff first alleged a section 1981 cause of action. See First Amended Complaint, November 8, 1973; Appendix at 65. Although plaintiff's original *pro se* complaint was filed on July 6, 1973, within the five year limitations period, that complaint alleged only a Title VII violation. We hold that under the facts of this case, the section 1981 claim is time barred because it does not relate back to the time of the filing of the original complaint.

Federal Rule of Civil Procedure 15(c) provides generally that an amended pleading will relate back to the date of the original pleading if the claims or defenses asserted in the pleadings arose out of the same conduct, transaction or occurrence.[4] This relation back concept is intimately connected with the policy underlying statutes of limitations. As Professor Moore stated:

Rule 15(c) is based on the concept that a party who is notified of litigation concerning a given transaction or occurrence has been given all the notice that statutes of limitation are intended to afford. Thus, if the original pleading gives fair notice of the general fact situation out of which the claim or defense arises, an amendment which merely makes more specific what has already been alleged . . . will relate back even though the statute of limitations has run in the interim.

\* \* \* \* \* \*

[A]n amendment which changes only the legal theory of the action, or adds another claim arising out of the same transaction or occurrence, will relate back.

3 Moore's Federal Practice ¶ 15.15[3], at 15–194 to 15–205 (2d ed. 1979). On this basis, courts have held that an amended complaint alleging a cause of action under section 1981 will relate back to the original complaint if the section 1981 claim arises out of the same transaction or occurrence set forth in the original complaint. See *Goss v. Revlon, Inc.*, 548 F.2d 405, 407 (2d Cir. 1976); *Harkless v. Sweeny Ind. School District*, 554 F.2d 1353, 1359 (5th Cir. 1977). But such is not the case here.

In his original complaint, plaintiff did include as a Title VII violation the termination of his employment, but the charge which formed the basis for the right to sue letter and which was made part of the complaint related only to a termination on December 12, 1971. Nowhere in that charge did plaintiff set forth or attempt to set forth any "conduct, transaction or occurrence" relating to the August 9, 1968 discharge. In fact, the original complaint did not apprise defendants of *any* allegedly discriminatory action occurring before 1971.

Since the original complaint did not give defendants any notice of the claim relating to the 1968 discharge, the amended complaint, insofar as it asserts a section 1981 claim based on that incident,[5] does not re-

---

4. Rule 15(c) provides in pertinent part:

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

5. Even the amended complaint does not specifically address the 1968 discharge. Rather, it objects to GM's "[t]erminating the plaintiff's

late back. The five year statute of limitations operates as a bar to plaintiff's claim, and the district court properly granted summary judgment against him.

In his brief on appeal, plaintiff does not object to any of the other claims decided against him by summary judgment; consequently, we consider them waived and do not address them.[6]

## IV

▮ Plaintiff's final complaint on appeal is that the district court erred in dismissing under Rule 41(b)[7] his one section 1981 claim which did go to trial. Again, we disagree.

Plaintiff claims that on January 27, 1979, he was discharged for violating Shop Rule 38, which proscribed changing clothes before quitting time, and Shop Rule 39, which provided for discipline for repeated rule violations. Although plaintiff admitted to changing clothes early, he alleged that the discharge was racially motivated. According to plaintiff, there were between thirty and forty other employees changing early, about half of whom were white, but only black employees received reprimands.

At trial, however, the plaintiff could recall the names of only six other employees who were in violation of Shop Rule 38, and he admitted that all of those men were black. He could not recall the name of one white employee allegedly in the locker room before quitting time. Indeed, the four witnesses called by plaintiff, all of whom were black and all of whom admitted to being in the locker room early and receiving reprimands, were unable to agree with or substantiate the claim that there were whites in the locker room. As the district court stated:

> [T]he evidence is that plaintiff and five other black [sic] were caught in the locker room and were disciplined. There is no evidence of any whites who were caught and who were not disciplined . . . . [T]here is no evidence of the rule [Shop Rule 38] being enforced in a *racially* disparate manner.

*Patterson v. General Motors*, No. 73 C 1751 (N.D.Ill. Dec. 26, 1978) at 14–15 [emphasis in original].

In evaluating a Rule 41(b) motion for involuntary dismissal at the close of plaintiff's evidence, the district court is

> bound to take an unbiased view of all the evidence, direct and circumstantial, and accord it such weight as [the court] believe[s] it entitled to receive.

*Allred v. Sasser*, 170 F.2d 233, 235 (7th Cir. 1948). We hold that the district court's detailed findings of fact and conclusions of law are clear evidence that it properly exercised its duty. We cannot say that the court was clearly erroneous in concluding that

> plaintiff has not only failed to substantiate his claim of race discrimination by a preponderance of the evidence, [but he has also] failed to show *any* evidence to support such a claim.

*Patterson v. General Motors*, No. 73 C 1751 (N.D.Ill. Dec. 26, 1978) at 18 [emphasis in original]. Plaintiff admitted to violating Shop Rule 38 and did not deny that he had previously violated other shop rules.

We have considered all other arguments advanced by plaintiff. Finding them all without merit, we affirm the judgments below.

AFFIRMED.

---

employment on various occasions." First Amended Complaint at 3, in Appendix at 67. *Since the district court implicitly recognized that allegation as sufficient to raise the 1968 discharge, we, too, will consider it sufficient for purposes of the relation back analysis.*

**6.** In any event, we believe the district court correctly decided all of the issues raised in the summary judgment motions.

**7.** Rule 41(b) provides in pertinent part:

> After the plaintiff . . . has completed the presentation of his evidence, the defendant . . . may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. Fed.R.Civ.P. 41(b).

SWYGERT, Circuit Judge, concurring in part and dissenting in part.

Although I concur with Part II of the majority's opinion, affirming denial of class certification, I respectfully dissent from sections A and B of Part III, in which the majority affirms summary judgment denying plaintiff's claims concerning transfers in 1971 and 1974. I also dissent from Part IV, in which the majority affirms the dismissal under Rule 41(b) of plaintiff's claims regarding the locker room incident.

Summary judgment "is never warranted except on a clear showing that no genuine issue as to any material fact remains for trial." *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 498 (7th Cir. 1972). "[A]ll reasonable doubts touching the existence of a genuine issue as to material fact must be resolved against the movant." *United States v. Farmers Mutual Insurance*, 288 F.2d 560, 562 (8th Cir. 1961). Before we conclude that no genuine issue of fact exists concerning the 1971 transfer, we should be precise as to the content of plaintiff's claim, the facts supporting it, and the facts put forward by defendant in support of its summary judgment motion.

Plaintiff's claim is that General Motors violated his civil rights by

Replacing the plaintiff on his job with a white worker of lesser seniority and experience.

(Second Amended Complaint, March 5, 1974, A. 74.) Plaintiff's pretrial submission of November 6, 1975 specifies two such instances, the first on September 13, 1971, and the second on February 1, 1974. Plaintiff states that on September 13, 1971 . . . the Plaintiff was replaced by a less senior caucasian in Department 7031; that this was never the custom and represented a violation of seniority rights of the Plaintiff; that several of the fellow workers in Department 7031, with comparable seniority to the Plaintiff, had never been reassigned and replaced with a fellow employee of lesser seniority. . .

This claim was the subject of grievance No. 938774. On September 17, 1971, plaintiff filed EEOC charge number TCH2–0641. This became EEOC case No. YCH3–075. According to the EEOC findings,

Charging Party's co-workers state that they know of no other such instance where an employee with as much seniority as the Charging Party has even been moved from their [sic] work stations.

Although plaintiff was unable to name the person by whom he was replaced, the affidavit of Ernest Mielke, the union shop committeeman, confirms that he was in fact transferred on that date. (R. 70, p. 2.) The defendant states, in response to plaintiff's request for discovery, that it has no record of the name of the employee who replaced Patterson on September 13, 1971.

The affidavit of Roger Kaspar submitted by the defendant in support of its motion for summary judgment states that under the collective bargaining agreement transfer of employees is the sole responsibility of management, and is not governed by seniority rights. Kaspar states that the company was "unable to discover anything which occurred on the date alleged affecting plaintiff's seniority rights." (A. 96.) If this affidavit fully responded to plaintiff's claims, summary judgment would be proper unless the affidavit were controverted. But the affidavit addresses itself only to a possible violation of contractual seniority rights. The company has no record of any such violation, and there may well have been none. But as the defendants acknowledge in their brief (at 13), the affidavit

constituted a complete defense to Plaintiff's claim that his seniority rights were violated, unless it could be established that the custom and practice was different than the provision of the contract.

Plaintiff alleged just such a custom, but the defendant asserts that plaintiff failed to set forth specific facts in support of such a custom and practice claim. Plaintiff's counter-affidavit, adopting his pre-trial submission, asserts that such transfer "was never the custom," and that similar workers were not similarly transferred. The EEOC findings, which are part of the record, indicate that his co-workers said they knew of

no other such transfer. Although not precise, these statements and findings are specific facts supporting plaintiff's claim of the negative custom of not transferring employees with seniority.

The Kaspar affidavit submitted by defendant is in no way addressed to plaintiff's claim that the transfer violated rights due by custom to his seniority. The affidavit therefore does not establish facts defeating plaintiff's claim, and does not entitle the movant to summary judgment.

The 1974 transfer involved similar facts. In the pretrial submission which plaintiff adopted as his counter-affidavit, he stated only:

That on 2/1/74 Plaintiff's seniority was violated by being replaced with a white employee of lesser seniority; that at this time the Foreman was cook; that at this time Plaintiff was employed in Department 7031,

and further,

That such violation of seniority had its basis in racial discrimination.

I agree with the majority that plaintiff's Title VII claim on these facts is barred by his failure to file a timely charge with the EEOC. However, I believe that his Section 1981 claim was sufficient to withstand summary judgment. In moving for summary judgment, the defendant relied on the same affidavit of Roger Kaspar it employed with regard to the 1971 transfer. As I have already indicated, that affidavit denies any violation of contractual seniority rights, but is not addressed to any possible violation of customary rights. If the plaintiff stated a sufficient claim in that regard, it stands unrefuted, and should not have been disposed of by summary judgment. Although the assertion that transfer such as occurred in 1971 "was never the custom" is not repeated in referring to the 1974 transfer, the transfers are clearly presented as similar, and the statements regarding custom should be understood as applying to both. Accordingly, as to this claim also I dissent.

Plaintiff's only claim which did go to trial, a section 1981 claim of discriminatory discipline in 1969, was dismissed under Rule 41(b) at the close of plaintiff's evidence. On a Rule 41(b) motion "the trial court is not required to consider the evidence in the light most favorable to the plaintiff," *Woods v. North American Rockwell Corp.*, 480 F.2d 644, 646 (10th Cir. 1973), and in review "we must view the findings [of the trial court] in the same way as those entered at the close of all the evidence, determining only whether they are clearly erroneous." *Ibid.* Even under that severe standard, however, I believe that dismissal was improper.

Plaintiff was discharged on January 27, 1969 (later reduced to a six week suspension) for changing clothes in the locker room before quitting time, in violation of Shop Rule 38. That violation, coupled with prior violations of rules against falsification of records and lateness, also constituted a violation of Rule 39, against repeated rules violations. Plaintiff's claim focuses on the locker room incident. His claim that the discipline as to that incident was racially discriminatory is based on two different arguments. First he claims that whites who were in the locker room at the same time were not disciplined. If there were evidence to support that claim dismissal would clearly have been inappropriate, but the district court found, and I agree, that such evidence was entirely lacking. His second claim, however, is that the rule against changing clothes early was by custom not enforced on Saturday nights and early changing on Saturday night had never before given rise to a violation. The rule was enforced on this Saturday night, he claims, as part of a pattern of harassment for his activity as a racial organizer.

The district court found that

the evidence is that plaintiff and five other black [sic] were caught in the locker room and were disciplined. There is no evidence of any whites who were caught and who were not disciplined. No matter what the past practice, therefore, there is no evidence of the rule being enforced in a racially disparate manner.

Enforcement of the rule may not have been racially disparate, but it may still have been

discriminatory if it was selectively enforced against plaintiff. The district court found, however, that "the evidence established that there was no past practice of condoning violations of Rule 38 for going to the locker room early." First the district court noted that plaintiff's claim that it was regular practice to go to the locker room early on weeknights as well as Saturday nights had been discredited, since on weeknights the locker room was locked until two minutes before quitting. As for the existence of the practice on Saturday, the district court relied on the findings of the arbitration umpire, who found it "obviously rather unlikely that the Rule should find enforcement as to straight time work and nonenforcement as to overtime work." The umpire also noted that the men found in the locker room had acknowledged being caught, and had not protested their disciplinary action.

The district court's reasoning will not support its conclusions. First, plaintiff's claim as to practice on Saturday nights is not significantly discredited by proof of a contrary practice on weekdays. Second, the umpire's assumption that practice on Saturday is "unlikely" to differ from practice during the week is based only on conjecture. Finally, the acknowledgement of wrongdoing by the men caught only confirms what was never denied, that there was a rule against early changing. Their

behavior does not imply there was no contrary practice.

Furthermore, the district court's findings ignore the manifest weight of the evidence. Each of plaintiff's witnesses testified that he was accustomed to changing early on Saturday and had never before been reprimanded for it.[1] The Union shop committeeman, Mr. Williamson, did testify, as the district court notes, that on one occasion in 1968 the Company "cracked down" on violations of Rule 38. Far from refuting the plaintiff's claim, however, the exceptional nature of this "crack down" clearly implies that violations of Rule 38 were not customarily disciplined. Thomas Dallas did say that "I had been going in there on several occasions more than once, changing clothes and coming out, and on some occasions I would get run out by supervision. . . ." (160) Since he also testified that he had never been reprimanded in the past, the implication is that even when the supervisors enforced the rule they treated violations leniently, and did not issue reprimands.

The district court's conclusion that no practice existed of condoning changing early on Saturday can be sustained only by discrediting the testimony of all the witnesses. Although on a Rule 41(b) motion to dismiss "the trial court is not required to consider the evidence in the light most fa-

---

1. Regarding custom, the testimony was:

Aaron Heard: ". . . when it comes to Saturday, the doors were open, people have completed their jobs assigned and in most buildings went to the locker room and changed clothes. . . . it was something they had condoned in the past." (74.)

John Stephens: "I knew I was breaking the rule, I knew that, but, you know, we had done this all of the time. We had been doing that ever since I had been there. . . . mostly on weekends, just on Saturdays." (177.)

Dolphas Thomas: "I knew that you weren't supposed to go into the locker room early, but under the circumstances I would have gone anyway. . . . Because the lights was going out. . . . " Q. Was it customary for the company to shut off the lights at the end of the shift? A. Only on Saturday nights. (133–134.) It was not one of the practices of mine but if I

got through early I suppose I went before the whistle blew. (136.)

Thomas Dallas: "I was violating the company rules because the law forbids you to go in there before the whistle, but it was one of those things, it was open and I had finished my work, I decided I would go in and change clothes which I did more than one time . . on previous occasions." (146.)

Regarding absence of prior reprimands, the testimony was:

Stephens: Q. Prior to this time you never received any reprimands? A. No. (118.)

Thomas: Q. You had gone to the locker room early on Saturday night without receiving a reprimand, is that true? A. I have. (137.)

Dallas: Q. Did you ever go to the locker room early on a Saturday night on any previous shift? A. I had on many occasions. Q. Did you ever receive a reprimand for that? A. Not to my knowledge. (151.)

vorable to the plaintiff," *Woods, supra,* 480 F.2d at 646, it is bound to "take an unbiased view of all the evidence." *Allred v. Sasser,* 170 F.2d 233, 235 (7th Cir. 1948). The findings suggest that the court did not do so. I believe they are clearly erroneous, that the grant of the motion to dismiss was an abuse of discretion, and I would therefore vacate the dismissal of this claim and remand for further proceedings.