Eleanor WEST, on behalf of herself and all persons similarly situated, Plaintiff,

v.

ALLIS–CHALMERS CORPORATION, Siemens-Allis, Inc., and International Union United Automobile, Aerospace and Agricultural Implement Workers of America and Local 248, United Automobile, Aerospace and Agricultural Implement Workers of America, Defendants.

Civ. A. No. 79–C–194.

United States District Court, E.D. Wisconsin.

April 5, 1982.

William Lynch, Milwaukee, Wis., for plaintiff.

John Skilton, Foley & Lardner, John R. Sapp, Michael, Best & Friedrich, James P. Maloney, Zubrensky, Padden, Graf & Maloney, Milwaukee, Wis., for defendants.

## DECISION and ORDER

TERRENCE T. EVANS, District Judge.

This is a sex discrimination case brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. The plaintiff, Eleanor West, has been an employee of the defendant Allis-Chalmers Corporation since the late 1940's and for some time a member of the defendant unions. The defendant Siemens-Allis is a successor to Allis-Chalmers with respect to certain operations formerly run by A–C. West's amended complaint alleges a litany of discriminatory practices, including these against the corporate defendants:

a. Failing and refusing to hire females on an equal basis with men;

b. Establishing and maintaining job classifications which result in exclusion of females because of their sex from jobs and job opportunities for which they are otherwise qualified and for which sex is not a bona fide occupational qualification;

c. Failing and refusing to provide training for females because of their sex for positions for which sex is not a bona fide occupational qualification;

d. Failing and refusing to promote females because of their sex to positions for which sex is not a bona fide occupational qualification;

e. Establishing and maintaining procedures for the reduction of the working force and procedures for recall to work from layoff which by their terms and as applied result in the assignment of female employees to less desirable jobs than male employees because those jobs pay less and/or offer fewer opportunities for advancement and/or offer less job security;

f. Failing and refusing to pay females on an equal basis with men for substantially equal work;

g. Failing to make available to female employees information concerning the availability of job openings while providing such information to male employees;

h. Failing to provide physical facilities for women equal to those of men;

i. Agreeing to and discouraging females from exercising their right to complain outside the grievance procedure provided for in the collective bargaining agreement to appropriate authorities about sex discrimination in terms and conditions of employment;

j. Failing and refusing to negotiate contracts which would correct and eliminate the policies and practices described in paragraphs a through i above.

The amended complaint alleges that the unions

" . . . have failed adequately to represent members of the collective bargaining unit who have been victims of employment discrimination:

a. By failing and refusing to negotiate contracts which would correct and eliminate the policies and practices set forth above; and

b. By agreeing with the other defendants to discourage and by discouraging females from exercising their rights to complain outside the grievance procedure provided for in the collective bargaining agreement to appropriate authorities about sex discrimination in terms and conditions of employment."

Before me is the plaintiff's motion to certify a plaintiff class consisting of

"all females who after July 2, 1965, applied to be or who have been and/or now are employed by Allis-Chalmers Corporation at its West Allis plants irrespective of when initially hired and all women who have applied for, have been and/or now are employed by defendant Siemens-Allis, Inc. at West Allis, Wisconsin, and all females who applied to be or who have been and/or now are employed in the LRAD Division at West Allis, Wisconsin. The class is limited to positions within the bargaining unit or units for the West

Allis plant of the defendant corporations represented by the union defendants." The corporate defendants have filed motions to deny class certification, and Siemens-Allis has moved for a determination that the action cannot be maintained on behalf of any class of S–A employees. Also pending is the plaintiff's motion to compel discovery. With respect to the certification issue, the parties have filed voluminous briefs and affidavits as well as considerable statistical data in support of their positions.

I

The prerequisites for maintaining a class action are set forth in Rule 23(a), Federal Rules of Civil Procedure, as follows:

> *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Each of these elements must be satisfied, even in a Title VII discrimination suit. *Patterson v. General Motors Corp.,* 631 F.2d 476, 480 (7th Cir.1980). See also: *East Texas Motor Freight v. Rodriguez,* 431 U.S. 395, 405, 97 S.Ct. 1891, 1897, 52 L.Ed.2d 453 (1977). The structure of Rule 23(a) gives rise to a certain orthodoxy in analyzing class certification questions, but because of the complexity of this particular case I shall address the prerequisite elements out of statutory sequence.

## A. Commonality

The defendants argue that the nature of West's particular grievances turn on facts unique to her, and thus are not susceptible to class treatment. In *Patterson, supra,* the plaintiff charged GM with a variety of racially discriminatory practices and sought to represent a class of minority persons employed or who might be employed at several GM plants. In affirming the district court's denial of class certification, the court of appeals concluded that Patterson's particular grievances were too individualized to satisfy the "commonality" requirement of class treatment, and further, that the deficiency could not be cured by alleging similar grievances of other similarly situated employees:

> ". . . Although a class action will not be defeated solely because of some factual variations among class members' grievances, see *Donaldson v. Pillsbury Co.,* 554 F.2d 825, 831 (8th Cir.), *cert. denied,* 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977), plaintiff in this case has simply asserted *no* facts relating to other members of the purported class. Moreover, 'even if the plaintiff were to specify grievances of other members of the purported class, the acts for which plaintiff complains are not susceptible to class treatment.' *Patterson v. General Motors,* No. 73 C 1751 (N.D.Ill. Sept. 26, 1974) at 6. A certifiable class claim must arise out of the same legal or remedial theory, see *Donaldson, supra,* 554 F.2d at 831, and grievances of other employees similar to those asserted by plaintiff would not meet that requirement. The issue of whether a particular job assignment or promotion denial was discriminatory would depend upon any number of factors peculiar to the individuals competing for the vacancy, including relative seniority, qualifications, availability for work and desire to perform the job. Each disciplinary action would present a different set of facts for each employee."

Although West has alleged that the corporate defendants have engaged in generally discriminatory policies regarding, for example, promotions, transfers, layoffs, job training, and physical facilities, simply alleging that they are general policy does not alter the individualized nature of the claims, nor does it alleviate the problem of "mini-trials" with respect to each such claim of each class member. If the language of *Patterson* is to have any vitality

at all, it should not be so easily circumvented merely by pleading in express terms what is probably implicit in most class action complaints alleging discriminatory practices. Rather, the factors which cause claims of discrimination to move from the realm of those which are "too personal for class action certification," *Patterson,* at p. 482, to those which lend themselves to class treatment must be more substantial—that is, they must relate to the nature of the claim, not the manner in which they are pleaded.

In affirming the denial of class certification, the *Patterson* court of appeals quoted the district court:

"[u]nlike the typical Title VII class action case, this is not a case challenging a general employment policy such as testing, seniority rules, weight lifting restrictions, pregnancy policies or other policies of general application which clearly relate to a class of numerous similarly situated employees." (At 480).

An examination of the factual allegations contained in the plaintiff's amended complaint indicates that the violations alleged by West differ significantly in nature from those described in the above quotation: the discriminatory promotion, transfer, layoff, recall, job training and facilities complaints are clearly so closely connected to West's individualized circumstances that they could not be viewed as common to a group of similarly situated individuals.

Another problem exists with respect to West's claims that the defendants' discriminatory policies discouraged female employees from seeking job advancements and from filing EEOC charges. Aside from the fact that she has not alleged that she personally has suffered these injuries (to the contrary, the record indicates that she has been active in both regards), which raises typicality questions, claims which involve the state of mind of class members—i.e., whether a member would have applied for a job but chose not to do so because of her feeling that it would be futile—makes identification of class members especially difficult and renders such claims inappropriate for class treatment. *Simer v. Rios,* 661 F.2d 655, 669 (7th Cir.1981).

## B. Typicality

On the "typicality" requirement of Rule 23, the court of appeals in *Patterson* made essentially the same observation as it did with respect to commonality:

" . . . In this case, plaintiff's complaint makes no mention of specific factual allegations with respect to the claims of the class as a whole; consequently, our 'inquiry into typicality' is severely limited.

"But even if plaintiff were to specify grievances for other members of the purported class, the acts about which he complains are not susceptible of class treatment. Because plaintiff's claims are so personal—*he* was replaced by a less senior white worker; *he* was harassed in retaliation for seeking redress of *his* various grievances—'it is predictable that a major focus of the litigation . . . [would have been] on an arguable defense unique to the named plaintiff . . . [so that] the named plaintiff is not a proper class representative.' *Koos v. First National Bank of Peoria,* 496 F.2d 1162, 1164 (7th Cir.1974)."

West's complaint contains a section entitled "Facts," in which the allegations form a chronology of her personal experiences as an A–C employee and her dissatisfaction with a variety of personnel actions by which she was affected. She recounts her transfers to lower paying or less desirable positions, her grievances concerning job openings for which she was qualified but was not selected, as well as job openings about which she was not informed. The supplemental pleading continues in the same manner, recounting a particular episode involving the creation and filling of a new position in her department, for which she and other females applied but were not selected. The allegations here are too individualized to be viewed as typical of the claims of other class members.

It is significant that the plaintiff seeks to represent applicants as well as present and past employees of the defendant corpora-

tions. The admonition of the U.S. Supreme Court in *East Texas Motor Freight, supra,* and reiterated in *Patterson,* that the representative of a purported class must "possess the same interest and suffer the same injury as the class members," 431 U.S. at 403, 97 S.Ct. at 1896; 631 F.2d at 482, dictates the conclusion that a plaintiff employee (who by definition has been hired) does not have the same interest and certainly does not suffer the same injury as an applicant who is denied employment. Accordingly, with respect to West's claim of discriminatory hiring, her claim is certainly not typical of the rest of the class. *Hill v. Western Electric Co.,* 596 F.2d 99 (4th Cir.1980); *Fields v. Village of Skokie,* 502 F.Supp. 456 (N.D.Ill.1980). For the same reason, neither are her claims alleging that the defendants' policies discouraged females from seeking advancement or filing EEOC charges.

### C. Adequacy of Representation

The individualized nature of West's claims also implicates this element. *Patterson, supra* at 481–482. I do not see how Ms. West can adequately represent the interests of other employees whose factual situations may differ considerably from hers. Moreover, with respect to those claims which are not typical of hers, the inadequacy is obvious.

The defendants also challenge West's adequacy as a class representative based upon a stipulation between her and the union defendants which provided, among other things, that she would forego any damage claims against the unions. The corporate defendants argue that the stipulation demonstrates West's inability to protect the interests of all class members, not only by improperly compromising viable damage claims, but also by failing to notify putative class members of the compromise. I do not view the compromise in itself as indicative of West's inadequacy as a class representative, nor do I believe that notice should have been given to putative class members. However, because of the serious shortcomings already discussed with respect

to the commonality and typicality elements, there is no need to pursue the issue of adequacy in any more detail.

Before leaving the question, it is necessary to dispose of an issue concerning the present status of what has been termed the "across-the-board" theory of discrimination in Title VII actions. In brief, the question is whether, in view of the recent "same interest-same injury" language of *East Texas Motor Freight,* a class representative may pursue claims of across-the-board discrimination even if the named plaintiff has not experienced or suffered every aspect of discrimination alleged. The plaintiff argues that the "across-the-board" class action is still alive and well following *East Texas Motor Freight,* but the corporate defendants contend that the "same interest-same injury" language cannot be reconciled with the broad-based discrimination charges in across-the-board cases. Fortunately, the facts of this case make resolution of this issue possible without reaching a more difficult question of the status of across-the-board cases generally. I have little doubt that in a proper case, across-the-board theories may be properly alleged while still remaining faithful to the "same interest-same injury" language, provided the named plaintiff or plaintiffs collectively suffered from those across-the-board discriminatory practices. In such cases, judicious use of subclasses might well satisfy Rule 23(a). In this case, however, there is but one named plaintiff who, in my opinion, may only represent others to the extent that she herself has the same interest and has suffered the same injury. Accordingly, to the extent that her amended complaint alleges discriminatory conduct on the part of the corporate defendants which has not been directed toward her and which she has not suffered in particular, those claims cannot serve as a basis for class treatment.

### D. Numerosity

The record suggests that during the period of time relevant to this lawsuit, the defendant corporations have employed a substantial number of females. If a class

were to be certified precisely as the plaintiff has proposed it, I would have little difficulty concluding that the numerosity element were satisfied. Inasmuch as I have concluded that Eleanor West has not stated claims which are susceptible to class treatment, it is unnecessary to further consider this factor.

### E. Other Class Issues

Several issues remain. Siemens-Allis has moved for an order declaring that the plaintiff cannot represent any class of S–A employees. In view of the foregoing discussion, that motion has already been resolved. Also pending is the plaintiff's motion to compel the corporate defendants to answer certain interrogatory questions relative to class issues and claims. In light of the foregoing conclusions, it is not appropriate for the plaintiff to seek discovery of information unrelated to her individual claims. Accordingly, to the extent that the plaintiff's written interrogatories seek to pursue class issues and claims, her motion to compel discovery will be denied; as to those which seek information which is relevant to her individualized claims or which may lead to the discovery of such evidence, the motion will be granted.

### Scope of West's EEOC Charges

■ Although Ms. West may not pursue her claims as a class representative, there is still a question concerning the scope of her individualized claims as determined by the dates she filed her EEOC charges. There is no contention here that the plaintiff has not met the Title VII requirements of a timely EEOC charge and prompt suit upon receipt of a notice of right-to-sue. Instead, the defendants' argument is that the time limits established by 42 U.S.C. § 2000e–5(e) define the temporal limits of the plaintiff's claim. Specifically, the defendants argue that the plaintiff's claims can in no event extend more than 300 days back from the date her charge was filed with the EEOC, January 8, 1973. Moreover, they further contend that West's second EEOC charge must be treated separately, and thus a second 300-day period defines the backward reach of the claims encompassed by the second charge. The plaintiff argues that the second EEOC charge is merely an amendment to the first, and thus should not be given separate consideration when applying the 300-day limit. In addition, she contends that the claims stated in her amended complaint are all encompassed in the first EEOC charge.

West's first EEOC charge was filed, for purposes of this analysis, on January 8, 1973. The complaint alleged denial of promotional opportunities with resulting loss of financial benefits. The EEOC assumed jurisdiction over her second discrimination charge on January 7, 1975. The second charge is denominated "amended," and it reiterated the first charge—specific details of her denial of promotional opportunity— and then added general language charging A–C with "establishing a continuing policy of discriminating on the basis of sex against females, in its hiring, promotional and pay practices in violation of Wisconsin Fair Employment Law and the Civil Rights Act of 1964." It also included a charge of inadequate representation against the unions.

The defendants contend that the plaintiff's second EEOC charge is not an amendment within the meaning of that term in 29 C.F.R. § 1601.11(b) (1974). That regulatory section provided that EEOC charges could be amended to allege "additional acts which constitute unlawful employment practices directly related to or growing out of the subject matter of the original charge," and further allowed such amendments to relate back to the original filing date. Despite the apparent narrowness of the first EEOC charge, and the contrasting breadth of the second, I am satisfied that the second one is sufficiently related to the first to qualify as an amendment within the purview of the above-cited regulatory section. Accordingly, to whatever extent the 300-day backward reach becomes significant, that period should commence on January 8, 1973.

It is my conclusion that Eleanor West's adequacy as a class representative does not turn upon the details of her EEOC charges,

or even her stipulation with the defendant unions. Instead, following the lead of *Patterson, supra,* I am of the opinion that the shortcomings discussed above in connection with the commonality and typicality requirements precludes a finding that she is an adequate class representative. Because her claims are so individualized, indeed appearing as a chronicle of her own personal grievances with the defendant corporations, I do not see how she can adequately represent the interests of other individuals whose particular experiences will no doubt be different.

The foregoing discussion suggests that because West's claims are too individualized for class treatment, her motion for class certification must be denied.

IT IS THEREFORE ORDERED that the plaintiff's motion to certify this action as a class action is denied and that the defendants' motions to deny class certification are granted.

IT IS FURTHER ORDERED that the plaintiff's motion to compel discovery is denied insofar as it seeks to discover material relative to class claims and issues, and in other respects granted.

IT IS FURTHER ORDERED that a status conference in this matter is scheduled on May 19, 1982, at 9:45 a.m.