Lloyd **JOHNSON**, Cornelia Slaughter, Evongelon Cummings, individually and on behalf of all others similarly situated, Plaintiffs,

v.

Langhorne M. **BOND**, Administrator Federal Aviation Administration, Defendant.

No. 80 C 0080.

United States District Court, N. D. Illinois, E. D.

April 6, 1982.

**126**

Martin P. Greene, LaFontant, Wilkins & Butler, Chicago, Ill., for plaintiffs.

Dan K. Webb, U. S. Atty., Martin B. Lowery, Asst. U. S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge.

This matter is before the court on plaintiffs' motion for class certification and defendant's cross-motion to dismiss the class allegations or, in the alternative, for judgment on the pleadings as to the class action allegations. These motions raise issues of both a procedural and a substantive nature.

*Background of the Case*

Plaintiffs are three black federal employees or former employees. Defendant Bond is the Administrator of the Federal Aviation Administration (FAA), the federal agency that employs or employed plaintiffs. Plaintiffs have filed an action pursuant to Title VII, Section 717(c), of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16(c), alleg-

ing that defendant maintains racially discriminatory training and promotional policies and practices.

Plaintiff Lloyd Johnson is employed by the FAA as an Electronics Technician. He alleges that in December 1978 he was passed over for promotion to a supervisory position because of his race. Plaintiffs Evongelon Cummings and Cornelia Slaughter allege that their training as air traffic controllers was terminated because of their race. Cummings was in training at the Carbondale Tower, presumably in Carbondale, Illinois, and Slaughter was at the Alton Tower in Cottage Hills, Illinois.

Plaintiffs seek to represent a class "composed of black persons who are or have been employed and black persons who have been denied benefits, training and promotions by the Defendant in the Great Lakes Region."[1]

Defendant has moved to dismiss the class allegations on the ground that none of the named plaintiffs has exhausted the class action administrative remedies provided in 29 C.F.R. §§ 1613.601–.643. Moreover, defendant contends that plaintiffs have not satisfied the class action prerequisites of Rule 23, Fed.R.Civ.P.

*Exhaustion of Class Action Administrative Remedies*

Section 717(c) of the Civil Rights Act provides a statutory cause of action for federal employees aggrieved by discriminatory employment practices. *Brown v. General Services Administration*, 425 U.S. 820, 829–30, 96 S.Ct. 1961, 1966, 48 L.Ed.2d 402 (1976). The section also imposes certain prerequisites to bringing such a civil action, primarily an initial recourse to administrative proceedings. *Id.* at 832. Regulations promulgated pursuant to Section 717 provide procedures for processing class action complaints of discrimination. 29 C.F.R. §§ 1613.601–.643.[2]

---

1. The Great Lakes Region of the FAA consists of the states of Minnesota, Wisconsin, Illinois, Michigan, Indiana and Ohio.

2. Both the individual and class action procedures require an aggrieved employee to file his

charge initially with the employing agency. If the agency finally denies the employee relief,

Based on these regulations, defendant argues that exhaustion of the class action administrative remedies is a prerequisite to maintaining the present action as a class action. Defendant further argues that administratively processing an individual complaint does not satisfy this prerequisite.[3] Defendant cites *Thomas v. United States Postal Service*, 27 Em.Prac.Dec. ¶ 32,272 (N.D.Cal. Oct. 20, 1981), to support this argument.

In *Thomas*, the plaintiff had filed an individual grievance on his own behalf at the administrative level in which he had alleged the existence of a discriminatory policy, but he had never filed a class claim at the agency level. The plaintiff asserted that he need not present such a class administrative complaint prior to pursuing a class action in federal court and that his individual grievance sufficiently exhausted the administrative remedies. The court, however, reasoned that all of the key cases cited by the plaintiff predated the class action regulations and denied the plaintiff's motion for class certification as premature, for failure to exhaust the class action administrative remedies.

█ In this case, Cummings, Slaughter and Johnson all filed individual grievances at the administrative level with the FAA. According to *Thomas*, which this court believes to be correctly decided, none of these filings is sufficient.

█ In May 1977, however, Johnson also filed a class action administrative complaint. From the present record, the court cannot determine whether this filing exhausted the administrative remedies for this action. Initially, there is some question whether the class on whose behalf Johnson

filed the administrative charge would include Cummings and Slaughter, not to mention other unnamed putative class members. Johnson's class action complaint encompassed the AFS and Air Traffic Divisions in the Great Lakes Region of the FAA but appears to be limited to those blacks and other minorities who were denied promotion beyond the GS–12 level on the basis of race. Arguably, this class would not include blacks at lower GS levels.[4]

Assuming *arguendo* that Johnson's class action FAA charge could serve as a basis for the class alleged in this case, it is not clear whether Johnson exhausted the administrative procedures on this charge because the record contains several gaps in the procedural history of the charge. Johnson filed the class action charge in May 1977, and in February 1981, the EEOC rendered its final decision on the appeal of that charge. At some time in between the FAA rejected the charge for failure to comply with the criteria of 29 C.F.R. §§ 1613.-603–.604[5] and Johnson appealed this decision to the EEOC, but the record does not indicate when. These two dates are needed to resolve the issue of exhaustion because Johnson, with Cummings and Slaughter, filed this civil action in January 1980, thirteen months before the EEOC ruled on his appeal.

Johnson's filing suit prior to the final decision on his appeal is not necessarily improper. Section 717(c) and the implementing regulation 29 C.F.R. § 1613.641, authorize a grievant to file suit at four separate times:

(1) Within 30 calendar days of his/her receipt of notice of final action taken by his/her agency on a complaint or claim;

he may appeal to the EEOC, but need not do so. *Richerson v. Jones*, 572 F.2d 89, 95 (3d Cir. 1978). Instead of, or in conjunction with, taking an appeal, the employee may file a civil action, as long as he complies with the statutory deadlines.

**3.** Defendant concedes that all of the named plaintiffs need not exhaust their administrative remedies, *Eastland v. TVA*, 553 F.2d 364 (5th Cir.), *cert. denied*, 434 U.S. 985, 98 S.Ct. 611, 54 L.Ed.2d 479 (1977), but contends that at least

one of the named plaintiffs must have used the class action administrative process.

**4.** For example, the complaint in this case alleges that Slaughter was at the GS–9 level when she was denied certification.

**5.** This criteria are basically identical to the prerequisites for a class action found in Rule 23(a), Fed.R.Civ.P.

(2) After 180 calendar days from the date he/she filed a complaint or claim with his/her agency if there has been no decision on the complaint or claim;

(3) Within 30 calendar days of his/her receipt of the decision of the Office of Review and Appeals on his/her appeal; or

(4) After 180 calendar days from the date he/she filed an appeal with the Office of Review and Appeals, if there has been no Office of Review and Appeals decision.

The regulations also provide that the filing of a civil action does not terminate the administrative process, so it would be possible, for example, for an employee to file a civil action after an adverse agency decision and then decide to pursue his administrative appeal concurrently.

Johnson cannot claim that his filing suit was timely under subsection (3), as there was no final decision on his appeal when he filed suit. But because the record does not show when the FAA rendered its final agency decision rejecting Johnson's class complaint or when Johnson filed his appeal, the court cannot determine whether Johnson's filing suit was timely under subsections (1), (2) or (4). Plaintiffs in the complaint merely allege that they filed administrative complaints with the FAA over 180 days prior to filing suit, but this does not suffice under subsection (2) without an allegation that the FAA did not render a decision within the 180 days. Moreover, if the FAA did render a decision prior to Johnson's filing suit, the timeliness of his complaint would be determined by reference to subsection (1) or (4).[6]

Johnson contends that even if the filing of this action were premature, this defect has been cured by the final administrative decision issued during the pendency of the civil action, citing *Richerson v. Jones*, 572 F.2d 89 (3d Cir. 1978).

The facts in *Richerson* distinguish it from the present case. There, the plaintiff was persuaded to withdraw his administrative complaint after being assured that informal steps would be taken to end the allegedly discriminatory practices. These assurances were never fulfilled and the plaintiff later "refiled" his formal complaints. Less than 180 days after these refilings, the plaintiff intervened as a party plaintiff in a class action in federal court.

The Third Circuit held that the dismissal of the plaintiff's complaint for failure to exhaust the administrative remedies was erroneous, concluding that the second filings reinstated the date of his initial administrative complaints for purposes of the 180-day exhaustion rule. The court then went on to state that even if the second filings did not reinstate the initial charges, the dismissal was erroneous because any failure to exhaust was cured by the final administrative decision that issued during the pendency of the civil action.

The Third Circuit, however, explicitly declined to hold as a general rule that a premature filing may be cured by subsequent administrative action.

"Thus, by holding here that the district court erred in dismissing the appellant's claim for failing to exhaust administrative conciliation remedies, we do not intend to create a general exception to the exhaustion requirement. Rather, we only hold that under these circumstances, where the employee did not bypass the administrative process, where the process of conciliation was given an opportunity to function, and where the agency in effect misled the employee, the appellant should not be compelled to delay bringing

---

**6.** Subsection (2) logically pertains to suits filed after the agency has had a complaint for 180 days without decision *and* before the agency issues its decision. The language of the statute on which the regulation is based reads as follows:

"... after one hundred and eighty days from the filing of the initial charge with the department, agency, or unit ... until such time as final action may be taken by a department, agency, or unit, an employee ... may file a civil action ...."

42 U.S.C. § 2000e–16(c). Thus, to be timely under subsection (2), Johnson must have filed his civil action after 180 days had passed without a decision by the FAA and prior to the FAA's eventual decision. The record does not reveal whether this was the case.

his action in federal court for more than 180 days during which the conciliation opportunity was available to the agency." 572 F.2d at 98. In this case, there has been no allegations that the FAA in any way misled Johnson, and therefore no justification for ignoring the time limitations imposed by the statute.

Until very recently, the failure to adequately allege the exhaustion of administrative remedies would have necessitated dismissal of the complaint. The prerequisites of Section 717(c) were seen as jurisdictional in nature, *Gaballah v. Johnson,* 629 F.2d 1191, 1198 (7th Cir. 1980), and plaintiffs' failure to adequately allege exhaustion would have rendered their complaint jurisdictionally insufficient.

In *Zipes v. Trans World Airlines, Inc.,* —— U.S. ——, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982), the Supreme Court held that the filing of timely charges with the EEOC under 42 U.S.C. § 2000e–5 is not jurisdictional, but in the nature of a statute of limitations. This holding would also govern the analogous time provisions of 42 U.S.C. § 2000e–16(c).[7] Accordingly, failure to exhaust administrative remedies is a defense, and as the present record does not show conclusively that Johnson failed to comply with the class action administrative procedures, defendant has not sustained his burden of proof on the issue. His motion to dismiss the class action allegations for failure to exhaust administrative remedies must be denied.[8]

*Class Certification*

■ To maintain this suit as a class action, plaintiffs must satisfy the prerequisites enumerated in Rule 23(a), Fed.R. Civ.P., which are: (1) the class is so numerous that joinder of all parties is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the named plaintiffs are typical of the claims or defenses of the class; and (4) the named plaintiffs will adequately protect the interests of the class. For the reasons that follow, the court concludes that plaintiffs have met none of the Rule 23(a) prerequisites.

**A.  Numerosity**

The complaint alleges that discriminatory policies exist at three FAA facilities, O'Hare Airport in Chicago, Carbondale Tower, and Alton Tower. Plaintiffs, however, seek to represent a class of employees from the entire Great Lakes Region, a six state area. They cite statistics showing that in 1978 there were 485 black employees within this Region and that in 1979, there were 598. They argue that these figures satisfy the numerosity requirement. The flaw in plaintiffs' reasoning is that they have not established any basis from which this court could infer that the FAA discriminates on a region-wide basis.

In *Rowinski v. Vaughn,* 76 F.R.D. 241 (D.D.C.1977), the two plaintiffs sought to represent a class of blacks, women, and persons over 40 who were employed by the Defense Supply Agency both at DSA headquarters in Washington, D. C., and at approximately twenty DSA field offices throughout the country. The two plaintiffs, however, were both employed at DSA headquarters. The court refused to certify an agency-wide class, reasoning as follows:

"The broad class requested by the plaintiffs . . . does not appear appropriate to

---

**7.** In *Zipes,* the Court was primarily concerned with the period between the act of alleged discrimination and the filing of an EEOC charge, rather than the period between the EEOC's final action and the filing of a civil action. The latter is more directly analogous to the present case where the issue centers on the time between the FAA action and the filing of this case.

However, in its discussion in *Zipes,* the Court did refer to *Mohasco Corp. v. Silver,* 447 U.S. 807, 811, 100 S.Ct. 2486, 2489, 65 L.Ed.2d 532 (1980), where the issue involved the time frame between final EEOC action and filing suit. The *Zipes* Court referred to this as a "related Title VII time provision" and noted that the *Mohasco* Court had treated a failure to comply with the provision as a defense and not a jurisdictional defect, —— U.S. at ——, 102 S.Ct. 1135. Thus the holding in *Zipes* is pertinent here.

**8.** This denial is without prejudice to Bond's refiling the motion provided he can conclusively demonstrate a failure to exhaust.

this case. The discrimination complained of here is alleged to have occurred in the Washington Headquarters Office of DSA. The only asserted connection between the employee personnel activities in DSA's Headquarters and in its numerous field offices is the operation of a common employee screening panel which apparently makes initial evaluations concerning promotion opportunities. It appears, however, that these field offices are individually responsible for their staffing decisions. Thus, . . . [the court] will limit the class to Headquarters employees only."

*Id.* at 244 (footnotes omitted).

Here, plaintiffs have not even alleged the "operation of a common employee screening panel." At best, plaintiffs have alleged facts establishing discriminatory policies at three separate facilities. They have not shown that the same policies operate at other facilities in Illinois, much less at other facilities in other states, or that it is likely that they do. Plaintiffs have not established any region-wide basis for their discrimination claims, and therefore their putative class definition is impermissibly broad.

Of course, it is possible to redefine the class to include those blacks who have been denied promotions and training on the basis of race at the three facilities involved. But there is nothing in the record to suggest that this class of persons would be so numerous as to make joinder impracticable.[9] Plaintiffs have not met the numerosity requirement.

### B. *Commonality*

"Although a class action will not be defeated solely because of some factual variations among class members' grievances . . . [a] certifiable class claim must arise out of the same legal or remedial theory . . . and grievances of other employees similar to those asserted by plaintiff[s] would not meet that requirement."

*Patterson v. General Motors Corp.*, 631 F.2d 476, 481 (7th Cir. 1980) *cert. denied*, 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981). In that case, the plaintiff, a black welder, alleged that GM maintained discriminatory employment practices. In particular, he alleged that GM replaced him with a white worker with less experience and seniority, failed to promote him, and harassed him in various ways. The plaintiff sought to represent a class of black and other minority employees and prospective employees at three GM plants.

The Seventh Circuit found that the plaintiff had failed to establish the existence of common questions of law or fact. With particular relevance to the instant case, the Court stated:

"The issue of whether a particular job assignment or promotion denial was discriminatory would depend upon any number of factors peculiar to the individuals competing for the vacancy, including relative seniority, qualifications, availability for work and desire to perform the job. Each disciplinary action would present a different set of facts for each employee. 'In other words, the plaintiff's claims do not relate to general policies or practices which are allegedly discriminatory, but rather to individualized claims of discrimination which could not possibly present common questions of law or fact sufficient to justify class action treatment.'"

*Id.*

The face of plaintiffs' complaint reveals the lack of common questions in this case. Solely with reference to the named plaintiffs, the court perceives that it would be necessary at trial to develop and explore two entirely distinct and unrelated (except for the fact that the common employer is the FAA) employment situations, one relating to electronic technicians, their job qualifications, job descriptions, and bases for promotion; and the other involving air traffic controllers, their training and certification. Furthermore, as the various FAA

---

**9.** Slaughter alleged she was the only black at Alton, and Johnson referred to three others at O'Hare who were also discriminated against.

facilities provide employment in a wide range of careers, the putative class members would include clerical people, medical technicians, aviation inspectors, and management personnel, as well as technicians and air traffic controllers. Each separate job category would involve different employment conditions and different training and promotion considerations. Plaintiffs have not met the commonality requirement.

## C. *Typicality*

As plaintiffs have not established that there are questions of law or fact common to the class as a whole, the court's inquiry into whether plaintiffs' claims are typical of the claims of the class is necessarily severely limited, see *Patterson, supra, id.*

Plaintiffs' claims are not typical because they do not arise out of a common factual and legal situation. Rather, their claims are personal and susceptible to individual defenses. For example, Johnson alleges that he was not promoted because he was ranked "highly qualified" instead of "best qualified"; Cummings alleges that despite her qualifications her training was terminated because her instructors did not grade her tests objectively, as required by the applicable rules and regulations; and Slaughter alleges that she was not certified as an air traffic controller because her supervisors singled her out for harassment and evaluated her performance by subjective and arbitrary standards. Clearly, each of these complaints will require an individualized inquiry into each plaintiff's performance, the conduct of each plaintiff's supervisors in evaluating him or her, and each plaintiff's qualifications in comparison with those employees that allegedly received nondiscriminatory or preferential treatment. The necessity for this individualized inquiry argues against typicality.

The court does not perceive that Johnson's claim is typical of the others' claims or that Cummings' is typical of Slaughter's, except that all three allege they were treated inequitably. As plaintiffs' claims are not typical of each others' claims, they cannot be typical of the unnamed class members' claims. Plaintiffs have not met the typicality requirement.

## D. *Adequacy of Representation*

As plaintiffs' grievances are so personalized, "there is a serious question as to whether [they] could fairly and adequately protect the interests of the class." *Patterson supra, id.* Separate claims of denial of a promotion can present substantially different facts and plaintiffs' energies may end up being directed toward presenting and defending their individual claims at the expense of the class. Moreover, as the Seventh Circuit noted in *Patterson,* there is even the possibility of a conflict of interest because it could develop that other putative class members competed with a named plaintiff for a particular promotion or placement. *Id.* at 482. Plaintiffs have not met the adequacy of representation requirement.

### *Conclusion*

Defendant's motion to dismiss the class allegations or, in the alternative, for judgment on the pleadings as to the class action allegations, is denied. Plaintiffs' motion to certify the class is also denied for failure to satisfy the prerequisites of Rule 23(a).