**Dema ARMSTRONG, et al., Plaintiffs,**

v.

**CHICAGO PARK DISTRICT, et al., Defendants.**

**No. 87 C 833.**

United States District Court,
N.D. Illinois, E.D.

Nov. 13, 1987.

 

Rufus Cook, Barbara Revak, Cook Partners Law Offices, Ltd., Chicago, Ill., for plaintiffs.

George Galland, Davis, Barnhill & Galland, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Dema Armstrong ("Armstrong"), Natalie Lyle ("Lyle"), Doris Shelby ("Shelby") and Mary Robinson ("Robinson") have sued the Chicago Park District ("District") and several present and former District Commissioners and managers, charging sex discrimination in employment in violation of 42 U.S.C. § 2000e–5(f)(1) ("Title VII") and 42 U.S.C. § 1983 ("Section 1983"). Plaintiffs have moved under Fed.R.Civ.P. ("Rule") 23 for certification[1] of a class for each claim.[2] For the reasons discussed in this memorandum opinion and order, the motion is denied as to both classes.

**1.** In grudging acquiescence to universal (though technically imprecise) usage, this opinion will:
　　1. speak of "certification" rather than, in the language of Rule 23(c), "[d]etermination ... whether [a] class action [is] to be maintained"; and
　　2. employ the "numerosity," "commonality," "typicality" and "adequacy of representation" terminology as a short-hand for the four prerequisites to certification under Rule 23(a).

**2.** P.Mem. 4 initially requested certification of a class comprising:

All full-time female employees of the Chicago Park District who were employed on or after January 29, 1985, who have been denied promotional opportunities by Defendants because of their sex.

Apparently in response to arguments raised by defendants, plaintiffs have since changed their request to seek certification for two classes. On their Section 1983 claim they now seek a class comprising (P.R.Mem. 3):

All full-time female employees of the Chicago Park District who were employed on or after January 30, 1982, who have been denied promotional opportunities because of their sex, while on their Title VII claim they seek to define the class as (*id.*):

## Background

Armstrong, Lyle, Shelby and Robinson are long-time female employees of District, performing in a variety of positions at various locations. While Armstrong and Shelby have received promotions since they filed sex discrimination charges with the Equal Employment Opportunity Commission ("EEOC"), each had not been promoted for many years when this dispute began, and each (like Lyle and Robinson) claims District failed to promote her because of her sex.[3]

Under the Illinois Civil Service in Parks Act (Ill.Rev.Stat. ch. 24½, ¶ 87) District has created "lines of promotion" through which employees may pass based on seniority and merit. Under the line-of-promotion system, vacancies are normally filled by selecting from employees in the next lower position, rather than from all District employees. While not all District jobs are encompassed within the lines of promotion, a substantial majority apparently are, and each of the class representatives is in such a position.

Complaint ¶ 13e identifies three allegedly discriminatory practices: (1) maintaining a schedule of sex-specific jobs based on inappropriate stereotypes,[4] (2) compensating

All full-time female employees of the Chicago Park District who were employed 180 days before August 7, 1984 or as of February 7, 1984.

Because defendants have filed a surreply brief that challenges the revised class descriptions, they have not been significantly prejudiced by consideration of the revised certification requests, although the revision disrupted orderly briefing and resolution of the issue. Defendants also assert the circumstances leading to plaintiffs' shift demonstrate their counsel is inadequate to represent the class. More on this later.

**3.** To the extent the details of the four representative plaintiffs' claims are relevant to this motion, they are discussed in the section of this opinion on typicality.

**4.** "Schedule G" of District's civil service regulations designated each position as either M for male, F for female, or O for either sex. District concedes, as it must, that the schedule is based on stereotypes that could not withstand even cursory scrutiny. But District contends it has been ignoring Schedule G for many years and it formally abolished the sex-based qualifications

positions held predominantly by women at rates lower than the rates for positions held predominantly by men and (3) "consistently pass[ing] over qualified women employees and promot[ing] less qualified males." Neither the Complaint nor plaintiffs' Memorandum provides much detail about the mechanisms by which District's promotion practices assertedly discriminate against women.

### Section 1983 Class

■ Under the Rules, a class may be certified only if it satisfies all four criteria of Rule 23(a)[5] and at least one of the clauses of Rule 23(b)[6] (*Trotter v. Klincar,* 748 F.2d 1177, 1184 (7th Cir.1984)). However, the court may not "conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action" (*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974)).

■ Plaintiffs have opted to define their class for the Section 1983 claim to include only those female employees "who have been denied promotional opportunities because of their sex." As the authorities teach, that very definition forecloses plaintiffs from meeting Rule 23(a)'s numerosity requirement.

Plaintiffs say District has approximately 660 female employees. Because the vast majority are within District's lines of promotion and must therefore compete with their male cohorts to ascend to the next rung, plaintiffs incorrectly label each of District's female employees as members of the class (P.Mem. 4–7; P.R.Mem. 4–8).[7] But plaintiffs' limitation of the class to women who have been denied promotional opportunities because of their sex requires plaintiffs to establish, at least preliminarily, that sufficient numbers of female employees have been discriminated against

---

in 1984 (D.Mem.Ex. B ¶ 5)—and none of the named plaintiffs claims to have been harmed by the Schedule G requirements. District still retains some sex-specific jobs where it believes sex is a bona fide occupational qualification—such as locker room attendant and boys' and girls' recreational coordinators. Plaintiffs have not challenged those distinctions.

5. Rule 23(a) reads:
 **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
 As *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982) put it, the class "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."

6. Plaintiffs seek certification both under Rule 23(b)(2) where:
 the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole·
 and under Rule 23(b)(3) where:
 the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

7. P.Mem. 4 also maintains joinder is impractical in employment discrimination cases because of the "inherent unlikelihood" that individuals who have been discriminated against would risk retaliation by asserting their claims. That position must be rejected. First, plaintiffs' reliance on *Slanina v. William Penn Parking Corp.,* 106 F.R.D. 419 (W.Pa.1985) is unfounded. *Slanina*'s certification of a relatively small class was not based on the inherent unlikelihood of class members asserting claims, but on the demonstrated class size together with the assertion of specific instances of retaliation against the named plaintiff (*id.* at 423–24). Second, plaintiffs have repeatedly implied that some of the named plaintiffs have been promoted in response to their having asserted claims (e.g., P.R. Mem. 5 (Shelby); *id.* at 7 (Armstrong)). That is hardly the sort of "retaliation" likely to chill potential plaintiffs.

during the class period. Plaintiffs have not attempted to do that because of the prohibition on inquiring into the merits in a class certification proceeding. What we have, then, is a "self-defeating class certification situation where the court is forced to consider the merits of the controversy and to deny the class because of inability to define who belongs in it before there has been a full trial" (4 Newberg, *Class Actions* § 24.17, at 254–55 (2d ed. 1985)). Plaintiffs' motion to certify the Section 1983 class is therefore denied.[8]

### Title VII Class

Plaintiffs' proposed Title VII class (see n. 2) does not suffer from the definitional difficulty facing the Section 1983 class. This opinion therefore proceeds to assess each of the Rule 23(a) factors in turn.

### 1. Numerosity

■ There can be no question that the class of female District employees as of February 7, 1984 is so numerous as to make joinder impracticable. On October 31, 1983 District had 416 full-time female employees (P.R.Mem. 4 and Ex. 2), and the number four months later could not have shrunk to a noncertifiable level.

Defendants counter that the total number of female employees is the wrong class because (1) the correct class should include only those who potentially have a discrimination claim,[9] (2) there is an insufficient showing of system-wide discrimination and (3) plaintiffs' data showing a "dearth of women" in higher paid jobs is insufficient to support class certification. Each of these contentions must be rejected.

First, limiting the class definition to those who potentially have a claim of discrimination is impermissible, for it would force the court to inquire into the merits of the class claims in violation of *Eisen*. Defendants would seek to avoid that difficulty, for numerosity purposes at least, by limiting class size to the number of promotions in the class period (D.Mem. 5). Yet where there are allegations of a discriminatory promotion policy, surely *all* female employees must be viewed as members of the relevant class for certification purposes.[10] As *Boykin v. Georgia–Pacific Corp.*, 706 F.2d 1384, 1387 (5th Cir.1983), *cert. denied*, 465 U.S. 1006, 104 S.Ct. 999, 79 L.Ed.2d 231 (1984) said, "it is impossible to identify those persons who would have been [promoted] but for the discrimination" (*accord, Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir.1984), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 784 (1985); and see this Court's opinions in *EEOC v. Chicago Miniature Lamp Works*, 640 F.Supp. 1291, 1298–99 (N.D.Ill. 1986) and 668 F.Supp. 1150, 1151–52 (N.D. Ill.1987)).

Second, plaintiffs need not show system-wide discrimination to obtain class certification. On that score, defendants cite several cases they read as rejecting class certification on numerosity grounds because of an insufficient showing that many persons were affected by the allegedly discriminatory practice. While some of the cases defendants cite do contain language so suggesting, they should not be read so broadly. Two of the cases merely note the absence of a record from which a numerosity finding could be made.[11] One (*Berggren v.*

---

**8.** Plaintiffs might perhaps seek to redefine the Section 1983 class to get around this opinion's narrow holding as to the absence of demonstrated numerosity. As the later discussion reflects, however, they would still fail the Rule 23(a)(4) test of adequacy of representation.

**9.** It will be recalled (see n. 2) that the class as originally defined required that limitation. That posed the problem just discussed as to the Section 1983 class.

**10.** This is not to say all class members would necessarily be entitled to relief if the class claim prevails. Any female employee who clearly did not meet valid criteria for promotion would

presumably not be entitled to relief. But without a determination of which promotion criteria are valid, and without an individualized assessment of each employee's credentials (once again matters that must await a trial on the merits), it would be impossible to assess the size of the class actually entitled to relief.

**11.** *Waller v. International Harvester Co.*, 98 F.R. D. 560, 563 (N.D.Ill.1983); *Jones v. Flagship International*, 36 FEP Cases 1679, 1681 (N.D.Tex. 1983), *aff'd on other grounds*, 793 F.2d 714, 718 (5th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987). Another, *Ray v. Phelps Dodge Brass Co.*, 35 FEP Cases 997,

*Sunbeam Corp.*, 108 F.R.D. 410 (N.D.Ill. 1985)) actually contains no holding on numerosity, while another (*Robinson v. Lehman*, 771 F.2d 772, 783 (3d Cir.1985)) does no more than acknowledge numerosity as a requirement.

Only *Johnson v. Bond*, 94 F.R.D. 125 (N.D.Ill.1982) contains a discussion detailed enough to permit comparison with the current situation. In *Johnson* three federal employees asserted a class claim on behalf of all black agency employees in a six-state region. Judge Getzendanner held (*id.* at 129–30) plaintiffs had alleged discriminatory practices only at their specific facilities, rather than throughout the region. *Johnson*, then, stands for the common-sense proposition that a plaintiff class should comprise people who were subjected to the same sort of treatment at the hands of defendant. That is, of course, the commonality requirement.

In *Johnson* the only thing that linked members of the plaintiff class was their employment by the Federal Aviation Administration ("FAA")—there were no allegations that FAA had a region-wide personnel policy or system that affected all employees. Here plaintiffs have identified a District-wide personnel system and a "lines of promotion" policy that they allege is operated in a discriminatory manner. Clearly the number of female employees affected by those policies and practices is too numerous to join.

Third, data showing a sexually-skewed pattern of promotions is not needed to establish numerosity. In that respect, defendants assert that plaintiffs' evidence as to higher paid District employees being predominantly men is insufficient to establish an inference that promotion policies have impermissibly favored men during the class period.[12] Defendants suggest there are many other possible explanations. Moreover, because defendants present data suggesting (at least to them) that women have fared well in recent promotions, they urge plaintiffs cannot show numerous women are in the affected class. But all that data goes directly to the merits of the class claim, and not to the size of the class as initially defined at the certification stage.

In sum, the numerosity requirement is plainly met. This opinion turns to the next criterion.

## 2. Commonality

On the second (commonality) requirement, plaintiffs need only demonstrate there is at least one issue of law or fact common to the claims of the class members (*William S. v. Gill*, 98 F.R.D. 463, 469 (N.D.Ill.1983)). In that regard, the question whether District's promotion policies impermissibly discriminate on the basis of sex is common to each of the claims (*Paxton v. Union National Bank*, 688 F.2d 552, 561 (8th Cir.1982), *cert. de-*

---

1000 (N.D.Ala.1983), [Available on WESTLAW, DCT database], involved a discovery dispute related to class certification and did not purport to resolve what showing was needed to establish numerosity.

**12.** From plaintiffs' data, it does appear women are dramatically underrepresented at higher levels of District employment; and D.Mem. 6 itself refers to a "dearth of women." Defendants string cite eight cases for the proposition that "snapshots" of the distribution of employees by sex are inadequate to prove discriminatory promotion policies. Of course plaintiffs don't have to prove discriminatory promotion policies on this threshold motion. None of the cases cited on this point by defendants discusses the showing needed to certify a class. Indeed, many of those cases were not class actions at all, and those that were never suggested the class had been erroneously certified. Defendants finally

cite *Tuber v. Continental Grain Co.*, 36 FEP Cases 933 (S.D.N.Y.1984) [Available on WEST-LAW, DCT database] as discounting hierarchical evidence in the class certification setting. *Tuber* relied on the named plaintiff's inability to identify other specific victims of discrimination as overriding some evidence of imbalance in the employer's work force. To the extent *Tuber* requires that a named plaintiff, in order to demonstrate numerosity, must identify other class members who have brought complaints of discrimination or believe they were discriminated against, it cannot be regarded as authoritative. Employees' subjective evaluations of the question whether they are victims of discrimination—really a legal question they are not qualified to decide—are irrelevant (*cf. Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553–57 (11th Cir.1986) (court cannot rely on failure to respond to interrogatories to reduce class size, then conclude a lack of numerosity)).

*nied,* 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983)). Similarly, should prospective relief appear appropriate, the proper form of that relief is an issue common to all class members.

Defendants have combined their arguments challenging commonality and typicality. All the issues they raise are conceptually more appropriate for discussion in the next section of this opinion, under the typicality rubric.

*3. Typicality*

■ By definition, the analysis of whether named plaintiffs' claims are typical of those brought on behalf of the unnamed class members must focus on the nature of the class claims and whether they are "fairly encompassed by the named plaintiff's claims" (*General Telephone Co. of the Northwest v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 1706, 64 L.Ed.2d 319 (1980)). For that purpose, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members" (*East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed. 2d 453 (1977), quoting *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 216, 94 S.Ct. 2925, 2930, 41 L.Ed. 2d 706 (1974)).

■ Complaint ¶ 13 alleges three types of discriminatory practices: (1) regulations that exclude females from many positions, (2) lower pay scales for positions held primarily by women than those for positions held primarily by men, even though the former positions require equal or greater "education, training, skill and perserverance [sic]" and (3) the passing over of qualified women to promote less qualified males. None of the named plaintiffs maintains she presents a claim under the first two practices.[13] Instead plaintiffs have framed their entire argument around the discriminatory promotion practice. This opinion's inquiry is thus limited to whether the named plaintiffs present claims, typical of those applicable to absent class members, of being discriminated against in promotions.

Armstrong was the Playground Supervisor at Touhy–Herbert Park from 1967 through March 31, 1986, when she was reclassified to Park Supervisor (Armstrong Dep. 5–6, 15). Her three predecessors at the park were men. Each was classified as a Park Supervisor, and she claims that had she been a male her job would have been so classified as well (*id.* at 38–43). On four occasions she has turned down promotions to Park Supervisor at other parks, insisting rather than her position at Touhy–Herbert be reclassified (*id.* at 69–75).[14]

Thus Armstrong is claiming her position was classified at a lower level than it would have been had she been male. While that may be a valid basis for an individual sex-discrimination claim, it is clearly not typical of the claims advanced on behalf of the class. Nowhere does the Complaint allege District systematically categorized job positions among its various classifications to the disadvantage of female incumbents. Armstrong's required proof will be very different from that needed to support the class claim of a discriminatory promotion policy. Even if Armstrong's claim is labeled as one involving being passed over for promotion, it is atypical because of her repeated refusal to accept promotions.

Lyle has been a Park Supervisor at Fuller Park since 1971, when she was demoted from Physical Activities Supervisor. While she maintains that demotion was discriminatory, any complaint based on 1971 events

---

**13.** Plaintiffs' failure to assert such a claim is wholly understandable. While there is a dispute over when the sex-stereotyped job descriptions were abolished, each named plaintiff holds a position that has always been open to both sexes, and the next position in each plaintiff's line of promotion has also been open to both sexes (see "Schedule G," P.R.Mem.Ex. 3). In addition, each named plaintiff currently holds a position dominated by men. If District is indeed paying "male jobs" more than "female jobs" of comparable worth, the named plaintiffs are therefore helped rather than hurt by that practice.

**14.** There is disagreement between the parties as to the reasons Armstrong rejected the promotions. While those differences may affect the merits of her claim, they have little if anything to do with the class certification issue.

is clearly time-barred.[15] Lyle's current complaint is that she has been passed over for promotion back into the Physical Activities Supervisor position and "even higher eventually" (Lyle Dep. 29).

District has ten Physical Activities Supervisor positions, five for men and five for women. Plaintiffs have not challenged District's practice of assigning only men to supervise boys' physical activities programs and only women to supervise girls' programs. Hence Lyle is really complaining that it is because she is a woman that she was denied a promotion to a position only women can hold! Regardless of the merits of *that* individual claim, it strains imagination to think of it as typical of those presented by the class. Most class members are in positions where their next promotion would be to a position for which both sexes are eligible. Their sex-based claim of being passed over in favor of less qualified males would (unlike Lyle's) carry at least some plausibility.[16]

Robinson is a Physical Instructor at Union Park. She contends she should have been promoted to Park Supervisor (bypassing Playground Supervisor) when her superior at the Park retired in 1986 (Robinson Dep. 29–30). Instead a male Playground Supervisor was appointed. Robinson has also asked that her name not be considered for a Playground Supervisor position at another park (Dep. 70–71, D.Mem.Ex. E).

Defendants contend that because Robinson was not a Playground Supervisor she was not even eligible for the Park Supervisor position and thus has no claim at all. Whatever the ultimate validity of that position, it is not the issue on class certification. But what *is* relevant is that in a system whose typical promotion pattern is to promote employees one rung at a time, the claim of a woman that she was discriminatorily denied a two-step promotion is clearly not typical of most class claims.

Shelby is a Head Attendant at Orr Park. She was promoted to that position in early 1986 [17] after serving as a Female Attendant for 16 years. Her claim is that she should have been promoted to Head Attendant long ago. Defendants counter that Shelby has no claim within the class period, so she cannot be a class representative.

Defendants are clearly correct that Shelby has articulated no claim that she was passed over for promotion within the Title VII class period, which begins in October 1983 (see text following n. 21). District promoted no one from Monthly Attendant to Head Attendant between 1984 and the group of promotions that included Shelby's in 1986. She has not challenged the failure to promote *anyone* to Head Attendant as discriminatory. Because she has no claim during the Title VII class period, Shelby cannot serve as a class representative.

Not one of the named plaintiffs is therefore a typical representative of the proposed class. In the class certification analysis, even one such Rule 23(a) strike is out. But as in the earlier discussion of the Section 1983 class (see n. 8), the possibility that curative efforts might be taken on the just-failed third criterion justifies this Court's going on to the final one.

### 4. Adequacy of Representation

Rule 23(a)'s fourth requirement is that the "representative parties will fairly and adequately represent the interests of

15. It is also problematic (to say the least) whether an alleged discriminatory demotion is typical of class claims based on discriminatory failure to promote women, but that need not be decided.

16. To the extent Lyle's claim is based on a failure to promote her to higher positions without the intermediate step of Physical Activities Supervisor, it is atypical for the same reasons next discussed as to Robinson.

17. Confusion exists as to the exact date of Shelby's promotion. Defendants' response to interrogatories says she was promoted January 1 (D.Mem.Ex. F at 6), while their memorandum says it was April 4 (D.Mem. 22). Defendants' supporting affidavit says Shelby was promoted in "early 1986" with a January 1 effective date. Finally, Complaint ¶¶ 23, 26 and 27 says Shelby was promoted in October. In any event, D.Mem. 23 says Shelby was "one of the first group" promoted to Head Attendant after District "unfroze" the position in 1986, and plaintiffs have not challenged the accuracy of that statement.

the class." That requirement encompasses two notions:

 1. Named plaintiffs themselves have the resources to pursue the class claims aggressively, with no conflict existing between the named and unnamed class members.

 2. Counsel for the class have the expertise necessary to represent the class adequately.

Defendants concentrate their fire on plaintiffs' counsel, identifying four supposed inadequacies: (1) their lack of experience with Title VII litigation and class actions, (2) their unsatisfactory performance in their only major class action to date, (3) impropriety of the litigation tactics they pursued in an unrelated case against the Park District and (4) their errors in representing the class in this case. While the last of these is of greatest concern for purposes of this motion, each will be addressed.[18]

■ Plaintiffs' counsel are Rufus Cook ("Cook") and Barbara Revak ("Revak"). Cook has been a member of the Illinois bar since 1959, Revak since 1974. While neither Cook nor Revak has extensive experience in representing plaintiff classes or in trying Title VII cases, that alone cannot bar them from serving as counsel.[19] Neither should counsel's relative lack of success to date be determinative—even exceptionally competent counsel can lose a losing case.

■ Cook and Revak are now serving as class counsel in *Alexander v. Chicago Park District*, No. 79 C 2242 (N.D.Ill.). *Alexander* charged District with (1) discrimination against black and Hispanic communities in allocating recreational resources and (2) racially discriminatory employment practices. While the employment claims await trial, the resource allocation claims have been resolved in District's favor.

Counsel's handling of the resource allocation counts in *Alexander* exhibited two deficiencies. One is no more than disquieting, but the second is serious indeed.

Both the trial court (D.Mem.Ex. M) and our Court of Appeals (709 F.2d 463, 465–66, 468–69 (7th Cir.1983)) were highly critical of the methodology of studies presented by counsel at a preliminary injunction hearing to show disparate allocation of resources. In that respect, the Court of Appeals specifically noted (with obvious disfavor) the direct involvement of Cook and his own employees in the generation and direction of the fatally-flawed studies (*id.* at 465, 468). However, while the studies were insufficient to carry the day, this Court will not reach the ultimate conclusion (despite its likelihood) that the inadequacies prejudiced the plaintiff class.

Unfortunately, the same cannot be said of counsel's second misstep. After judgment was entered against the plaintiff class on the resource allocation claim, Cook—rather than appealing—filed still another amended complaint reasserting the claims. Judge Leighton's dismissal of those claims on res judicata grounds was affirmed on appeal, 773 F.2d 850 (7th Cir. 1985), *cert. denied,* 475 U.S. 1095, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986). By amending the complaint post-judgment rather than pursuing an appeal, counsel unquestionably deprived the class of its right to appellate review of the merits of its claim. That fatal error in judgment (revealing a plain lack of analysis) remains both unacknowledged and unexplained by Cook and Revak.

---

**18.** Plaintiffs' counsel responded to defendants' attack on their adequacy (1) by attacking the tactics of defendants' counsel in a totally unrelated case and (2) by namecalling. That sort of "If I'm one, you're another" barrage of countercharges is totally irrelevant, as well as distasteful. Plaintiffs' counsels' competence is directly placed in issue by the requirements of Rule 23(a)(4). Defense counsel's competence and integrity is not. Accordingly the material at P.R.Mem. 38–40 is stricken.

**19.** D.Mem. 26 implicitly concedes that inexperience alone should not disqualify plaintiffs' counsel. It would be ironic to apply such a principle in an employees' class action case: Everyone is familiar with the chicken-and-egg problem of the job applicant who is unable to get hired (and thus gain the necessary experience) because experience is treated as an essential job qualification. Defendants cite no instance where class certification was denied based on counsel's lack of related experience.

Their handling of the *Alexander* class claims strongly suggests they are inadequate class counsel.[20]

Defendants also point to Cook's involvement in what they characterize as "a vendetta of harassing, frivolous litigation" against District (in the *"Ware* cases") as evidence that he would be inadequate class counsel. This opinion need not be prolonged by an attempt to describe or evaluate the extended legal battle the parties have rehashed here at some length. Cook's performance in the *Ware* cases is at most marginally relevant to the issue at hand.

One item that emerged from the debate, however, must be addressed. In recounting the tale of the *Ware* cases, D.Mem. 32 asserts:

> On September 28, 1979 ... Mr. Cook filed an original mandamus proceeding in the Illinois Supreme Court. Ex. U. The Supreme Court denied this petition without comment in an unreported order.

Cook characterizes that statement as a misrepresentation and asserts (P.R.Mem. 32–33, emphasis in original):

> The truth is that ... [o]n August 24, 1979 (See Exh. 9) the Supreme Court *granted* Ware's petition for leave to file a writ of mandamus.... That order having been entered ... and having been complied with by the time the Supreme Court next turned to the matter again, it was by then unnecessary to act further on the mandamus petition.

At that point he again accuses defendants' counsel of attempting to mislead this Court.

Before counsel thus charges an opponent with attempting to mislead a tribunal, he or she should scrupulously examine the basis on which the charge rests. No court takes such charges lightly. In this instance, Cook's and Revak's charges are wholly unsupported—in fact, are directly contradicted—by the record. Indeed, the Illinois Supreme Court order that Cook and Revak incorrectly cite as granting Ware's mandamus petition actually granted a petition brought by someone else and *opposed* by Cook's client Ware (P.R.Mem.Ex. 9 at 1). Moreover, Cook's contention before this Court that *his* mandamus petition was mooted by the Illinois Court's August 24, 1979 order is simply not credible, because he first filed his own petition a month later—September 28, 1979—and in doing so relied heavily on the earlier order (D.Mem.Ex. U ¶ 4).

It simply will not do for counsel to play fast and loose with the facts in that way ("People who live in glass houses...."). Any future misrepresentations by counsel will be met with appropriate sanctions.

Defendants' final contention as to inadequacy of the putative class counsel focuses on alleged errors already made in this action. Most important is counsel's initial choice of the class period on the Title VII claim. Originally they defined the class period for both the Section 1983 and Title VII claims as beginning two years before this lawsuit was filed. While the two-year limitation period is arguably the correct one for Section 1983 purposes,[21] there is no basis whatever for applying a two-year limitation period to the Title VII claim. Though the appropriate limitations period in a situation where (as here) state agency procedures are not used was not settled in this Circuit when this action was brought (*Lorance v. AT & T Technologies, Inc.*, 827 F.2d 163, 165 n. 2 (7th Cir.1987)), that period has just been decided to be 300 days before plaintiffs' EEOC charges were filed (*Gilardi v. Schroeder*, 833 F.2d 1226, 1229–32 (7th Cir.1987)). Because Armstrong, Lyle and Shelby all filed their charges August 7, 1984, the plaintiff class was entitled to a limitations period extending back to October 1983—a period more than a full

---

**20.** Defendants assert Cook's efforts to disqualify Judge Leighton, a motion followed by unsuccessful appeals and mandamus efforts, also suggest inadequate class representation. While it is true that there was no merit to the disqualification efforts, if counsel are given the benefit of the doubt those could be classed as overzealous, rather than inadequate, representation.

**21.** At least in this Court, that period is also too short (see n. 25).

year longer than their counsel originally claimed.

When defendants pointed out that obvious error, plaintiffs' counsel blithely proposed to change the class period as described, without offering any justification for their original blunder. But what is most troublesome is what counsel did (or, more accurately, did not do) once their limitations chestnut had been pulled out of the fire for them. Rather than researching just what the proper limitations period was, plaintiffs' counsel merely took defendants' word for application of the 180-day period. Independent research—of the type any plaintiff class is entitled to expect—would have disclosed that, although this Court had applied a 180-day period,[22] some of its colleagues had disagreed[23]—and as it turns out, our Court of Appeals has now chosen the longer period. Under those circumstances, responsible counsel—in *any* courtroom, including this one—should have requested a class period commencing 300 days before the EEOC filing. That would have preserved the class' rights to a maximum extent, whether against the need to appeal or otherwise. Counsel's choice of an incorrect opening date for a class period can seriously prejudice class members and has been considered by other courts as a factor justifying denial of class certification (*Hervey v. City of Little Rock*, 787 F.2d 1223, 1227 (8th Cir.1986)).[24]

While this opinion has already rejected certification of the Section 1983 class, the Cook–Revak handling of the limitations pe-riod for that class also reflects on their competence and diligence in pursuing the class claim. P.R.Mem. 2–3 proposes to amend the Section 1983 class period to go back five, rather than two, years before the filing of the suit. Counsel say they originally "chose a conservative approach to definition of the class" because *Anton v. Lehpamer*, 787 F.2d 1141 (7th Cir.1986) had not definitively decided whether a two- or five-year limitation period applied. If that is in fact the explanation, it means counsel intentionally chose to forego a position favorable to their clients—the class—because the law was unsettled! All clients (and a fortiori absent class members) are entitled to more thoughtful and vigorous representation than that.[25]

Those delinquencies, as disturbing as they are in terms of adequate representation, are not the only problem posed by counsel's performance in this case. As noted early on, counsel's circular definition of the Section 1983 class precluded certification of that class. That problem was readily avoidable, but Cook had not learned even from his limited experience in this area (his earlier motion to certify the class in *Waller*, 98 F.R.D. 560 had been defeated for essentially the same reason). 4 Newberg § 24.17, at 254 accurately characterizes such circular class definitions as "poor pleading." Here counsel's poor performance was doubly inexcusable.

Any determination as to adequacy of class representation at the certification

---

**22.** *Proffit v. Keycom Electronic Publishing,* 625 F.Supp. 400, 405–07 (N.D.Ill.1985) and cases adhering to *Proffit,* most recently *Savaglio v. Miller Fluid Power Corp.,* No. 87 C 5352, slip op. (N.D.Ill. Sept. 10, 1987) [Available on WEST-LAW, DCT database].

**23.** *Flagg v. Atchison, Topeka and Santa Fe Ry. Co.,* 662 F.Supp. 278 (N.D.Ill.1985) (Decker, J.); *Sere v. Board of Trustees of the University of Illinois,* 628 F.Supp. 1543 (N.D.Ill.1986) (Duff, J.).

**24.** It should be made clear, if it has not been already, that counsel's "choice of an incorrect opening date" refers to their total failure to apply the Title VII limitations timetable at all and to do so in the most conservative way—not

their failure to know in advance what the Court of Appeals would ultimately decide that timetable to be.

**25.** Defendants contend that despite *Anton, Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) should apply with full retroactivity to the claims of absent class members (D.Sur.Mem. 5–8). That question need not be reached here, because this Court continues to adhere to its position in *Shorters v. City of Chicago,* 617 F.Supp. 661, 662–66 (N.D.Ill.1985) that under *Wilson* a five-year statute of limitations remains proper for *all* Section 1983 claims in Illinois. Because our Court of Appeals, in deciding *Anton,* did not have before it the arguments this Court found persuasive in *Shorters,* that court merely assumed without deciding that the two-year period applies.

stage is necessarily predictive in nature. As always when we are required to predict likely human behavior, the bases for that prediction must lie in past conduct. In this instance counsel's conduct—both in prior litigation and, even more importantly, in the initial phases of this litigation—has been such as to compel an adverse determination. Based on counsel's limited experience in both class action and Title VII litigation, their serious errors in representing the class in *Alexander*, and their several serious mistakes even in the opening rounds of this litigation, this Court concludes plaintiffs' counsel have not satisfied the requirement of Rule 23(a)(4).

### Conclusion

Plaintiffs' motion to certify the Section 1983 class is denied for failure to satisfy both the numerosity requirement of Rule 23(a)(1) and the adequacy of representation requirement of Rule 23(a)(4). Plaintiffs' motion to certify the Title VII class is denied for failure to satisfy both the typicality requirement of Rule 23(a)(3) and the same adequacy of representation requirement. Because neither class therefore meets all the demands of Rule 23(a), this opinion has not been called upon to address the standards of Rule 23(b).

At this point the action survives only as an individual lawsuit on behalf of the named plaintiffs (subject to any disabilities one or more of them may prove to have). This action is set for a status hearing November 25, 1987 at 9:00 a.m. to discuss its future course.