**Edward L. WALLER, on behalf of himself and others similarly situated, Plaintiff,**

**v.**

**INTERNATIONAL HARVESTER COM-PANY, and International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, Local 1307, Defendants.**

**No. 82 C 0465.**

United States District Court, N.D. Illinois, E.D.

July 13, 1983.

Rufus Cook, Cook, Mitchell & Black, Chicago, Ill., for plaintiff.

Michael B. Erp, Katz, Friedman, Schur & Eagle, Chtd., Chicago, Ill., for the Union.

David J. Parsons, David P. Radelet, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for International Harvester.

## MEMORANDUM ORDER

BUA, District Judge.

The instant lawsuit was brought by plaintiff Edward Waller against his employer, International Harvester Company (the Company) and his union local, the International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, Local 1307 (the Union) alleging that he and the class which he represents were discriminated against in the context of their employment in violation of Title VII, 42 U.S.C. § 2000e et seq. Before the Court is the plaintiff's Motion for Class Certification. For the reasons stated herein, class certification is denied.

## FACTS

Plaintiff is a black citizen of the United States who was employed by the Company for more than 20 years and was a union member for most of his employment. During that time he was assigned to various production level jobs.

On March 22, 1976, the Company implemented a reduction in force and eliminated plaintiff's position in the furnace department. However, plaintiff was not laid off; instead he was moved to a position as a bore operator. He immediately filed a grievance protesting this action, claiming that because of his seniority, he should have been placed as a grinder operator. Under the applicable collective bargaining agreement, an employee whose position is eliminated by a reduction in force may bump less senior employees in other departments if he is capable of doing the work. An employee is deemed capable of doing the work if he can perform satisfactorily in the position after a three-day training period.

In his grievance, plaintiff asserted that because of his seniority and his previous experience in the position he should have been placed as a grinder operator. While the Company defended its actions in not placing plaintiff in the grinder position by asserting that the equipment used in the position had changed since plaintiff last filled the job, to settle the grievance it agreed to give plaintiff a three-day training program after which it would evaluate plaintiff's work. When, upon completion of the training, the Company felt plaintiff was unable to perform the job satisfactorily, plaintiff filed another grievance. In order to settle this and the previous grievance, the Company offered to give plaintiff another opportunity to qualify for the grinder position and to give plaintiff $100 in monetary compensation which plaintiff rejected. After plaintiff rejected a second offer which increased the monetary component to $200, the Union informed plaintiff that there was nothing more it could do and dropped its pursuit of the grievance. As noted by the plaintiff, the Company had nothing to do with the Union's dropping its grievance.

At no time during the grievance proceedings did plaintiff claim that the decisions of either the Company or the Union were based upon discrimination. Indeed, plaintiff admits that there was nothing inadequate about his training and that the disagreement was nothing more than a difference of opinion unrelated to race.

As he was unsatisfied with the grievance proceedings, plaintiff eventually filed a claim with the EEOC. Such claim was made in his individual capacity. The EEOC's decision concluded that there was no reasonable cause to believe that either the Company or the Union had engaged in racial discrimination. At roughly the same time, plaintiff filed an unfair labor practice charge with the National Labor Relations Board alleging that the Union breached its duty of fair representation. The NLRB dismissed the charge, concluding that the case was meritless.

In January, 1980, plaintiff instituted his original lawsuit in this Court. That lawsuit was filed by plaintiff on behalf of only himself and complained only of the actions and the company in the settlement of the grievance. After the Court dismissed the original action, the instant suit was filed as a class action.

Plaintiff seeks certification of two classes pursuant to Fed.R.Civ.P. Those classes are defined as:

## CLASS I

All present and former black employees of INTERNATIONAL HARVESTER COMPANY who have been racially discriminated against by INTERNATIONAL HARVESTER'S:

(a) failure to provide black employees with training on account of their race and color;

(b) failure to transfer black employees to job classifications for which they are eligible on account of their race and color;

(c) failure to promote black employees to fill job openings on account of their race and color;

(d) administration of its progressive discipline system in such a way as to discipline black employees more frequently, severely and inequitably than white employees on account of said black employees' race and color.

## CLASS II

All present and former black members of INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, LOCAL 1307, who are suffering or have suffered racial discrimination as a result of a conspiracy between the UNION and INTERNATIONAL HARVESTER (West Pullman Works), which conspiracy has resulted in the UNION'S not pursuing or pursuing less vigorously the grievances of black employees while pursuing vigorously the grievances of white employees, and which has resulted in the UNION'S not protecting the rights of black employees under LOCAL 1307's collective bargaining rights while protecting the rights of white employees.

■ Before a Court may certify a class action, the proposed class must meet all of the requirements of part (a) of Fed.R.Civ.P. 23 and one of the requirements of part (b) of the Rule. Under part (a), the class must meet the prerequisites of (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. When considering whether these prerequisites are met, the Court may look behind the pleadings and consider the depositions as well as various relevant affidavits and other documents on file before it makes a class determination. *General Telephone Company of the Southwest v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). In *General Telephone,* the Court, in justifying looking behind the pleadings, noted:

> Conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims. For respondent to bridge that gap, he must prove much more than the validity of his own claim.

*Id.* at 157, 102 S.Ct. at 2371.

■ The burden of showing that all of the factors of Rule 23(a) have been met rests with the party seeking class certification. *Valentino v. Howlett,* 528 F.2d 975, 978 (7th Cir.1976). While the Court is bound to construe each of the factors liberally, *Frankel v. Wyllie and Thornhill, Inc.,* 55 F.R.D. 330 (W.D.Va.1972), the ultimate determination of whether each factor has been met rests in the discretion of the Court. *Susman v. Lincoln American Corp.,* 561 F.2d 86, 90 (7th Cir.1977).

In light of the above framework, it is clear that the instant action cannot be certified as a class action. Initially, it is apparent that the numerosity requirement of the rule has not been met. As to both classes, plaintiff claims to represent "all present and former black employees of INTERNATIONAL HARVESTER COMPANY who have been racially discriminated against" in various ways by both the Company and the Union. As to neither class does plaintiff even attempt to ascertain size, nor does he supply any factual assertions in support of his conclusion that the number of black employees who have been discriminated against on the basis of race is so substantial that joinder would be impossible. Where the size of a proposed class is purely speculative, the numerosity requirement of Rule 23(a) is not met. *Patterson v. General Motors Corp.*, 631 F.2d 476 (7th Cir.1980). As plaintiff has made no estimate of class size,[1] the size of the class is purely speculative and class certification must be denied.

Class certification must also be denied because of plaintiff's failure to meet the commonality and typicality requirements. Under these prerequisites, before certifying a class the Court must find that "(2) there are questions of law or fact common to the class, [and] (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(2)–(3).

Plaintiff has failed to bridge the gap between his own claim of discrimination against him and a general broadly applied policy of discrimination on behalf of the Company as required by *Southwest Telephone, supra*. Throughout the pleadings and his supporting memoranda, plaintiff argues that *he* was subject to various manifestations of discrimination and that *he* was thereby victimized and harmed. What plaintiff fails to show or even argue is how other members of the proposed class were discriminated against or even that the Company or the Union had a general policy of discrimination which could be supported by the facts. No indication is given as to how the class members were discriminated against. Plaintiff merely concludes that because he has been allegedly discriminated against by the Company and the Union, such a policy of discrimination is widespread and effects a large number of individuals. Nevertheless, he fails to demonstrate such widespread discrimination. His allegations thus appear to be little more than speculation. As to both of the proposed classes, both the commonality and the typicality requirements are therefore unsatisfied.

At this juncture, the Court makes no determination as to the validity of the plaintiff's claims. Notwithstanding the arguments of the parties, which address the validity of the plaintiff's individual claims as much as they do the propriety of maintaining the instant suit as a class action, the Court by this order has only determined that the plaintiff has failed to show that the instant lawsuit should be maintained as a class action because it has failed to show that the conduct allegedly applied to him was applicable to a class of any substantial number.

## CONCLUSION

For the reasons stated herein, the Motion for Class Certification is denied.

IT IS SO ORDERED.

---

1. At one point in his Reply Memorandum to Defendant International Harvester's Memorandum Opposing Plaintiff's Motion to Certify Class, plaintiff asserts that 15 senior black employees were denied training and promotions because of their race. As no reasons are given why these 15 individuals could not be joined in the instant suit, a class of that size fails to meet the numerosity requirement and thus could not be certified.