**Edward DAY, on behalf of himself and others similarly situated, Plaintiff,**

v.

**CHECK BROKERAGE CORP. and Dean Slough, Defendants.**

No. 05 C 4912.

United States District Court,
N.D. Illinois,
Eastern Division.

March 2, 2007.

O. Randolph Bragg and Craig M. Shapiron Horwitz, Horwitz & Associates, Ltd., Chicago, IL, for Plaintiff.

Mark R. Karpus of Glenn & Lobue, Mattoon, IL, for Defendants.

## *ORDER*

GOTTSCHALL, District Judge.

Plaintiff Edward Day ("Day") brings this action against Defendants Check Brokerage Corporation ("CBC") and Dean Slough ("Slough") (collectively referred to as "Defendants"), alleging that Defendants sent him and the class he represents various debt collection letters that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 (2006) ("FDCPA"). Before the court is Day's motion for class certification. For the reasons set forth below, the court grants Day's motion.

## I. BACKGROUND [1]

Between March 3, 2005 and March 31, 2005, CBC [2] sent a series of four letters to Day in an attempt to collect a debt of $20.40 he owed Oberweis Dairy. Compl. ¶¶ 6–31. In the first letter, dated March 3, 2005, CBC informed Day that a check he had written to Oberweis Dairy for the amount of $20.40 did not clear. *Id.* Ex. A. The letter stated that CBC had been retained by Oberweis Dairy to act as its agent in the collection of the check and that Day now owed CBC a total of $65.40.[3] *Id.* The letter further stated that failure to make a prompt payment could result in additional fees and that it was in Day's "best interests to clear this check immediately," despite the notification at the end of the letter that Day had thirty days to dispute the validity of the debt. *Id.* ¶ 13.

On March 17, 2005, CBC sent Day a second letter demanding the $65.40 and stating, "You were recently advised that the above check did not clear your bank and is now the property of Check Brokerage Corporation.... we suggest you give this matter your immediate attention." *Id.* Ex. B. The letter then referred to and quoted Illinois Commercial Code § 3–806 regarding the liability for issuing a dishonored check. *Id.*

On March 24, 2005, CBC sent Day a third letter demanding the $65.40 and stating, "WE MUST HAVE YOUR PAYMENT NOW!!" *Id.* Ex. C. The letter then informed Day that, under Illinois law, he "could be liable for the amount of the check plus three times the amount of the check (not less than $100 and not more than $1500) plus attorney fees and court costs." *Id.* The letter further stated that, "additional charges are incurred the longer this remains unpaid." *Id.*

On March 31, 2005, CBC sent Day a fourth letter demanding the $65.40 and stating, "THIS CHECK REMAINS UNPAID! WE ARE, THEREFORE, GOING TO SHOW YOU HOW MUCH IT COULD COST

SHOULD IT GO TO LITIGATION." *Id.* Ex. D. The letter then details, *inter alia,* how a judgment would cost Day a total of $363.00, how his failure to appear in court for the citation hearing would result in a warrant for his arrest, and states that judgments "are usually picked up by CREDIT BUREAUS and can have an adverse effect on your future credit." *Id.* The letter concludes by stating, "Common sense would dictate that this check be paid at this point. THE AMOUNT DUE, INCLUDING THE CHECK AND SERVICE CHARGES TO THIS POINT, IS $65.40." *Id.*

Day alleges that it was Defendants' policy and practice to violate the FDCPA. Specifically, Day alleges that Defendants sent him a series of collection letters that were false, deceptive, or misleading as determined by the unsophisticated consumer standard and therefore in violation of 15 U.S.C. § 1692(e), (e)(2)(A), (e)(5), and (e)(10); that Defendants used unfair or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. § 1692(f) and (f)(1); and that Defendants contradicted and/or overshadowed the consumer's right to dispute the alleged debt within thirty days of receipt of the initial communication in violation of 15 U.S.C. § 1692(g)(a). Pl.'s Mem. in Supp. of Class Cert. 2. Day has moved to certify the following class:

> [A]ll persons with addresses within the state of Illinois who were sent one or more letters from Defendants in a form similar or identical to [the letters Day received] to recover a dishonored check written for personal, family, or household purposes which were not returned undelivered by the United States Postal Service during the one-year period of August 25, 2004, through August 25, 2005.

*Id.* at 1.

## II. LEGAL STANDARDS

A plaintiff seeking class certification must demonstrate that the proposed class meets

---

1. The facts set forth here are gleaned from the First Amended Complaint ("Compl.") and the Memorandum in Support of Plaintiff's Motion for Class Certification and exhibits.

2. CBC is a corporation that acts as a debt collector. The letters sent to Day were signed by "Walter Schlau," which plaintiffs allege is a ficti-

tious name used by Slough, the President of CBC.

3. The total amount was comprised of (i) the initial amount of the check ($20.40); (ii) a $25.00 "Return Check Charge"; and (iii) a $20.00 "Bank charge to Merchant." Compl. Ex. A.

all the requirements of Rule 23(a) of the Federal Rules of Civil Procedure and at least one of the Rule 23(b) requirements. *Williams v. Chartwell Fin. Servs., Ltd.,* 204 F.3d 748, 760 (7th Cir.2000). A class may be certified only if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). In order to maintain a class action for damages, the court must also find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R.Civ.P. 23(b)(3).

 A court has broad discretion to determine whether the proposed class meets the Rule 23 certification requirements. *See Uhl v. Thoroughbred Tech. and Telecomm., Inc.,* 309 F.3d 978, 985 (7th Cir.2002). Doubts about whether to grant certification generally are resolved in favor of certification. *Rogers v. Baxter Int'l, Inc.* No. 04 C 6476, 2006 WL 794734, at *2 (N.D.Ill. March 22, 2006); 3 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 7:17 (4th ed. 2002) ("Broad flexibility to modify an initial class ruling is built into Rule 23, so that courts have concluded that when any doubt exists concerning the propriety of class certification, it should be resolved in favor of upholding the class."). With these considerations in mind, the court now turns to the purported class.

### III. ANALYSIS

Day contends that his proposed class meets the requirements of Rule 23(a) and Rule 23(b)(3). Defendants argue that Day's class does not meet the numerosity and commonality requirements.

#### A. Numerosity

 A certifiable class must be so numerous that the joinder of all its members as plaintiffs would be impractical. Fed.R.Civ.P. 23(a)(1). Plaintiff need not allege the exact number or identity of class members. *See Vergara v. Hampton,* 581 F.2d 1281, 1284 (7th Cir.1978) ("The difficulty in determining the exact number of class members does not preclude class certification."); *Arenson v. Whitehall Convalescent & Nursing Home,* 164 F.R.D. 659, 662 (N.D.Ill.1996). Where the precise size of the class cannot be known until after complete discovery, the court may still find that the numerosity requirement is met. *Smith v. Short Term Loans,* No. 99 C 1288, 2001 WL 127303, at *13 (N.D.Ill. Feb.14, 2001) (numerosity requirement satisfied based on judicial notice of the fact that the number of persons receiving a form letter used to communicate with delinquent debtors was so large that joinder would be impracticable).

 In support of his allegations of impracticality, Day points to admissions by CBC that letters similar to those sent to Day were sent to more than 100 addresses within the State of Illinois. Pl.'s Mem. in Supp. of Class Cert. 4, Ex. 1. Based on this, Day alleges that such a class is so numerous that joinder of all members is impractical. *Id.* at 4. In the same set of admissions, CBC denies that such letters were sent to more than 500 addresses within the State of Illinois. *Id.* at 4, Ex. 1. CBC relies on this denial to dispute Day's showing of numerosity, arguing that the submission of a proposed class size ranging anywhere from 100 to 500 people is not sufficient to comply with the numerosity requirement. Def.'s Mem. in Opp. to Class Cert. 3. Defendants miss the point entirely.

 First, even if the actual number of class members falls on the lowest end of this range—a range that is supported by Defendants' own admissions—a class consisting of 100 members is large enough to satisfy the numerosity requirement. Smaller classes have been certified. *See, e.g., Swanson v. Am. Consumer Indus., Inc.,* 415 F.2d 1326, 1333 n. 9 (7th Cir.1969) (class of 151 held sufficient, but forty would have been acceptable); *Patrykus v. Gomilla,* 121 F.R.D. 357, 361 (N.D.Ill.1988) (finding a class of fifty members to be sufficient to satisfy numerosity requirement); *Rosario v. Cook County,*

101 F.R.D. 659, 661 (N.D.Ill.1983) (class of twenty held sufficient).

Second, to the extent that Defendants take issue with the submission of a range rather than an exact number, Defendants cite no authority supporting their argument. Instead, Defendants cite to *Patterson v. General Motors Corp.*, 631 F.2d 476 (7th Cir.1980) and *Waller v. International Harvester Co.*, 98 F.R.D. 560 (N.D.Ill.1983), which are employment discrimination cases where the plaintiff alleged facts that related solely to his personal grievances rather than challenging a general employment policy. *See Patterson*, 631 F.2d at 480; *Waller*, 98 F.R.D. at 563. Neither plaintiff supplied any factual assertions suggesting that there were others who had been discriminated against in the same way or that there was the likelihood of such a future class ever existing. *Patterson*, 631 F.2d at 480; *Waller*, 98 F.R.D. at 563. In these cases, the courts found that the size of the proposed class was "purely speculative." *Patterson*, 631 F.2d at 480; *Waller*, 98 F.R.D. at 563.

That is not the case here. Day has supplied Defendants' own admission that at least 100 people have received form letters similar to the ones he received. That is enough to demonstrate that there are many others who may have grievances similar to those of Day. Though Day has not supplied an exact number of class members, the court is satisfied that he has attempted to ascertain the class size through requests for admission and has given a reasonable estimate that supports the assertion that joinder is impracticable.[4] It is well established that plaintiffs are not required to provide an exact class size to satisfy the numerosity requirement.[5] *Vergara*, 581 F.2d at 1284. Even without an exact number, the court may take judicial notice that the class will be large due to the frequency with which collections letters are sent to debtors. *See, e.g., Smith*, 2001 WL 127303, at *13 ("Where it is general knowledge or common sense that the proposed class would be large, the court may assume that joinder would be impracticable."). It is unlikely many individuals could press their own claims. Accordingly, Day's proposed class satisfies the numerosity requirement.

### B. Commonality

■ In order to satisfy Rule 23(a)(2), a plaintiff must show that there are questions of fact or law that are common to all class members. This requirement is usually met where a class's claims arise out of some form of standardized conduct by the defendant. *See, e.g., Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir.1998) ("Common nuclei of fact are typically manifest where ... the defendants have engaged in standardized conduct towards members of the proposed class by mailing to them allegedly illegal form letters or documents"); *Smith*, 2001 WL 127303, at *13 (the commonality requirement "is usually met where the defendant has engaged in some standardized conduct, such as sending

---

4. The court notes that Defendants have a hard time availing themselves of the argument that Day is unable to provide an exact number of class members since they themselves presumably have access to the exact number of people who would be potential class members through their records. Indeed, Defendants themselves cite to a case where the court held, "Plaintiff's lack of knowledge as to the exact number of affected persons is not a bar to maintaining a class action, when the defendants have the means to identify those persons at will." *Ventura v. New York City Health & Hosp. Corp.*, 125 F.R.D. 595, 599 (S.D.N.Y.1989).

5. Defendants also argue that Day has failed to satisfy the numerosity requirement because he "has not provided assistance to the court as to how notice is going to be provided to the members of the class." Def.'s Mem. in Opp. to Class Cert 4. As a preliminary matter, Day alleges that this information is readily available from Defen-

dants' records. Pl.'s Reply Mem. in Supp. of Class Cert. 4. Further, ascertainability of class members is not a consideration that falls within the numerosity analysis. To the extent that Defendants are taking issue with the class definition, the ascertainability of class members is not a bar to class certification. *See Johnson v. Brelje*, 482 F.Supp. 121, 123 (N.D.Ill.1979) ("The fact that the classes may include persons who are not identifiable at the present, or that class membership may change by the end of the trial, is no impediment to the certification of these classes."); *Philadelphia Elec. Co. v. Anaconda Am. Brass Co.*, 43 F.R.D. 452, 462 (E.D.Pa.1968) ("difficulties in devising an adequate system of notice [fall] within the category of judicial housekeeping considerations, and not as necessarily demonstrating the lack of a genuine class of litigants, or the inadequacy of representation under 23(a)(1).").

out form letters that are allegedly illegal"); *Jackson v. Nat'l Action Fin. Servs., Inc.*, 227 F.R.D. 284, 287 (N.D.Ill.2005) (finding commonality where the class definition was limited to individuals who received a similar debt collection letter from named defendants); *Sledge v. Sands*, 182 F.R.D. 255, 258 (N.D.Ill. 1998) (same).

■■■■ Day's proposed class definition provides that all of the class members will have received one or more versions of the letters sent to Day by Defendants. The claims of the class members will revolve around whether those letters violate the FDCPA as determined by the unsophisticated consumer standard. That is enough to support commonality. To the extent that Defendants are taking issue with the use of "similar" in the definition, the court is not persuaded that this is enough to bar class certification. Factual variations among class members' grievances, as long as they are minor and do not affect the legal theory, do not defeat a class action. *Keele*, 149 F.3d at 594; *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 831 (8th Cir. 1977) ("When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment.").

### C. Typicality and Adequacy

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Rule 23(a)(4) requires that the named plaintiff fairly and adequately protect the interests of the proposed class. Defendants have not argued that Day fails to meet these two criteria and the court finds that Day satisfies them.

### D. Questions of Law and Fact Common to the Class Predominate

■■■■ In addition to the four requirements of Rule 23(a), a plaintiff asking a court to certify a class under Rule 23(b)(3) must show that common questions predominate over those questions affecting only individual members, and that a class action is superior to other methods of adjudication. Fed. R.Civ.P. 23(b)(3).

As discussed above, common questions will predominate. The common issue here is whether the debt collection letters that Defendant sent to Day and the class members violate the FDCPA. Defendants point to no individual issues that outweigh the question of whether those letters violate the FDCPA. Thus, common questions of law and fact predominate here.

■■■■ Furthermore, a class action is the best way to resolve the claims of the purported class. Where, as here, a group of consumers typically will be unable to pursue their claims on an individual basis because the cost of doing so exceeds any recovery they might secure, class actions are superior to individual litigation. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir.1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). Because the Defendants engaged in standardized conduct that affected the rights of many consumers, a class action is the most efficient way of resolving the issue of whether or not such conduct violated the FDCPA. *See Smith*, 2001 WL 127303, at *14 (a class action is "particularly suited" to the resolution of claims involving a defendant who has engaged in standardized conduct affecting many consumers); *Jackson*, 227 F.R.D. at 290 (noting that FDCPA class actions have been held superior due to general principles of judicial economy); *Sledge*, 182 F.R.D. at 259 (holding class action to be judicially efficient method of resolving a FDCPA claim "in lieu of clogging the courts with thousands of individual suits").

### IV. CONCLUSION

For the reasons set forth above, the court finds that Day has demonstrated successfully that his proposed class satisfies the four requirements of Rule 23(a) as well as Rule 23(b)(3). This court therefore grants Day's motion for class certification.